ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY
COMPANY *v.* AVEN.

Opinion delivered October 19, 1895.

RAILROAD COMPANIES—DUTY AS TO HIGHWAY CROSSING.—A railroad
company, in building and maintaining a bridge across a ditch dug
by it at a highway crossing, is bound to use reasonable skill and
diligence in providing against the ordinary dangers of travel;
and if rails, guards or barriers be reasonably necessary for that
purpose, and practicable, it is its duty to construct and maintain
them in the places needed.

RAILROAD COMPANIES—DEFECTIVE CROSSING—LIABILITY.—One who
was injured at a railroad crossing will be entitled to recover from
the railroad company, although the horse which he was driving
had become frightened and unmanageable, if the accident would
not have happened but for the company's negligence in failing to
keep the crossing in repair.

RAILWAY CROSSING—MAINTENANCE OF BRIDGE—INSTRUCTION.—An in-
struction that if, in the construction of a railway at and across a
public highway, "the railroad company cuts a ditch along the side
of the track and across the highway, it is its duty to construct and
maintain a safe and suitable bridge across and over said ditch," is
erroneous in making the railroad company a guarantor of the
safety of travelers.

RAILWAY CROSSING—DEGREE OF DILIGENCE REQUIRED.—An instruc-
tion that if the construction of defendant's railroad made it neces-
sary to erect a bridge at a public crossing to make the highway
available, it was the railroad's duty to so erect the bridge that the
highway should be restored to and kept in as passable a condition
as was consistent with the use of the railroad, and if guard rails
were required for such purpose to place them on the bridge, is
erroneous in making the company liable for an accident thereon,
although it had exercised ordinary care and diligence in maintain-
ing the bridge.

Appeal from Saint Francis Circuit Court.

GRANT GREEN, JR., Judge.

*Dodge & Johnson* for appellant.

1.   The verdict is contrary to the evidence and to
the law.   The frightening of the horse was the *prox-*

*imate* cause of the injury, and not the absence of guard rails. Defendant was not in law compelled to anticipate the unreasonable scaring of any horse ; the unusual is not to be guarded against, only the common and usual events of life. 5 Exch. 248 ; 29 Wis. 144 ; 56 Ark. 390 ; *Ib.* 521 ; 139 U. S. 237 ; 95 *id.* 130 ; 2 Thomps. Neg. 1084 ; Addison on Torts, 5 ; 29 S. W. 980 ; 4 Gray (Mass.), 397 ; 57 Ark. 414 ; 99 Mass. 605 ; Wills, Cir. Ev. p. 157 ; 50 N. W. 365 ; 65 Fed. 628 ; 115 Mass. 307 ; 34 A. & E. R. Cases, 551 ; 97 Mass. 258, 267 ; 98 *id.* 580 ; 148 *id.* 486. The liability of defendant is the same as that of a municipality, and it is held that it is not liable when the horse takes fright at some object for which the municipality is not responsible, etc. 29 Wis. 296 ; 57 Mo. 156 ; 68 Me. 152 ; 97 Mass. 258. As to concurring faults, see 1 Suth. Dam. p. 57 ; 70 Pa. St. 86 ; and as to *proximate* cause, 56 N. W. 19 ; 57 *id.* 117 ; 45 *id.* 1015.

2. It was error to refuse to instruct the jury to return a verdict for defendants. 57 Ark. 468 ; 34 A. & E. R. Cases, 551 ; 112 Pa. St. 574. The 1st, 2d, 3d, 4th instructions for plaintiff were erroneous, and it was error to refuse defendants 6th, 7th and 8th. See cases *supra*.

3. The verdict is excessive.

*S. R. Cockrill*, for appellee.

1. The exceptions of defendant were in gross. 114 N. Y. 399–405 ; 140 U. S. 238 ; 2 Wall. 339 ; 121 Ind. 387 ; Elliott, App. Pro. sec. 791 ; 10 U. S. Ct. App. (8 Ct.), 497 ; *Ib.* 630–1 ; 118 N. Y. 224–231 ; 88 N. Y. 13.

2. It was for the jury to say, upon the facts, whether the accident would have happened but for the absence of guard rails. The jury settled that fact in plaintiff's favor, and that ends the controversy. It is so held everywhere in such cases. The only divergence is

found in Masssachusetts and Maine, where it is held that if plaintiff loses control of his horse, he cannot recover. 29 Wis. 296; 71 *id.* 558; 68 Md. 389; 117 Pa. St. 353; 9 Ill. Ct. App. 229; 54 N. W. 693; 145 Pa. St. 220; 1 Suth. Dam. p. 262 *n*; 40 Conn. 238; 43 *id.* 148; 54 Mo. 598; 9 Vt. 411; 42 N. H. 197; 81 Pa. St. 44; 68 Md. 389; 116 N. Y. 476; 77 *id.* 83; 47 Hun, 439; 127 N. Y. 659; 79 Iowa, 204; 25 *id.* 108; 32 Minn. 308. Against this array stand Massachusetts and Maine alone. But even in Massachusetts the facts in this case justify a recovery. 145 Mass. 333–336. 56 Ark. 387 is consistent with appellee's theory.

3. The fact that plaintiff went upon the bridge when it had no guard rails was not evidence of contributory negligence. 52 Ark. 368; 54 *id.* 389; 59 Fed. 237.

4. The verdict is not excessive. 56 Ark. 594, 603; 13 Hun, 1; 18 Ark. 398; 48 *id.* 407; 57 *id.* 320; 11 How. (U. S.) 587; 2 Story, 661; 3 Sedg. Dam. sec. 1320; 18 S. E. 278; 31 Abb. N. C. 56; 57 Mich. 107, 119; 57 Tex. 105; 70 Iowa, 188; 61 Iowa, 452; 29 N. Y. Supp. 391; 76 Hun, 233; 12 Mo. App. 466; 71 Tex. 470; 33 Ill. App. 450; 5 Mont. 257; 4 Utah, 215; 79 Tex. 643; 31 Kas. 197; 33 *id.* 298; 87 Ky. 327; 6 Utah, 357; 16 Daly, 130; 76 Wis. 120; 69 Tex. 556; 87 Ill. 94; 24 Hun, 184; 39 *id.* 5; 62 Tex. 118; 14 N. Y. Sup. 336; 25 S. W. 1087; 11 *id.* 333.

BATTLE, J. John W. Aven brought this action against the St. Louis, Iron Mountain and Southern Railway Company to recover damages for a personal injury which he alleges was received by him through the negligent construction and maintenance of a bridge and the approaches thereto, which constituted the highway crossing of the defendant's railway track.

In 1882 the defendant constructed a railway over a public road in St. Francis county. It erected an embankment 6 feet high, and dug a ditch on east side

thereof 10 feet deep, 18 feet wide at the top, and 5 feet and 4 inches at the bottom, and thereby rendered the road impassable. In order to restore the road to use, and make a crossing for it over the railway, it made an inclined embankment to its track on the west, and placed a bridge across the ditch on the east, and approaches to the same. The bridge was 25½ feet long, and from 12 to 16 feet wide. One witness said that the principal part of the flooring of the bridge was 16 feet long, and that there were two or three planks near the center 12 feet in length; and another said about one-half were 12 feet long, and the other half 16 feet, and that the short planks began about the center of the bridge, and extended to the east end of it. "The fall of the approach to the bridge was about 21 inches to 10 feet, on the west side of the bridge, the side upon which the plaintiff approached at the time" the injury was received. The incline on the west side of the embankment was very steep. There were no railings or banisters on the bridge at the time of the injury.

On the morning of the 17th of September, 1892, the plaintiff approached the bridge from the west, driving a horse and cart or buggy. What followed he relates as follows : "I drove off, and my mare trotted on up to the railroad dump, and walked on the railroad track, and just about the time the cart got in the center of the track, the horse took a scare from something, I never have known what, but she made a fearful lunge, and jumped just as far as she could, and partially fell right at the edge of the bridge ; and as she came up I made an effort to jump out of the cart, and as I did that she came up, and went right over the bridge. The shafts of my cart struck the bridge, and she jumped square down on her head, and I and the cart and all pitched right over into the ditch and struck the bottom." The evidence shows that she jumped off about the center of the

bridge. In the fall the plaintiff's right leg was broken just above the ankle joint ; both bones were broken ; one pierced through the skin at the ankle. The joint was opened ; the membranes around it were ruptured ; and the synovial fluid escaped. He was confined to his bed many weeks, and suffered excruciating pain.

Plaintiff considered his mare safe; and testified that he never knew her to become frightened before she leaped from the bridge, but she was a "high-headed animal." His wife constantly refused to cross the bridge with him, in his buggy, while driving the mare, and would get out and walk across, but she did ride over with him when he was driving another horse, which died prior to the time he purchased the mare. He further testified that he never knew that the mare was partially blind, but she had a white speck in one eye. He traded her about four weeks after he was injured, and while he was confined to the house. One witness testified that she was blind in one eye; and another that he knew that she was a "fiery and high-headed animal." One witness testified that he asked the plaintiff, on the day of the accident, how it happened, and he replied, "I can't tell, but she must have had a fit."

The court instructed the jury, in part, over the objections of the defendant, as follows :

1. " The court instructs the jury that where a railroad is built across a public highway, it is the duty of the railroad company to construct and maintain proper crossings for the benefit of the traveling public ; and if, in the construction of the railway at and across the public highway, the railroad company cuts a ditch along the side of the track, and across the highway, it is its duty to construct and maintain a *safe* and suitable bridge across and over said ditch, so that the highway may be restored to a *safe* condition for travel."

2. "If the jury find from the evidence that the defendant cut a ditch across the public highway, as alleged in the complaint, and failed and neglected to erect and maintain a *safe* and suitable bridge across the same, and that the failure and neglect of the defendant railroad company to construct and maintain a *safe* and suitable bridge across the said ditch was the proximate cause of the injury to plaintiff, then you should find for the plaintiff."

3. "If the jury find from the evidence that the defendant railroad company cut a ditch across the public highway, as alleged in the complaint, and that it constructed a bridge across the same, then it is a question of fact for you to determine whether or not the same was sustained and maintained in a *safe* and suitable manner, and whether or not it was *necessary* that guard rails should have been constructed and maintained on said bridge; and if you find that it was *necessary*, and that the defendant failed and neglected to construct and maintain such guard rails, and that its negligence and failure in this behalf was the *proximate* cause of the injury and damage to plaintiff, then you should find for the plaintiff."

4. "If the jury find from the evidence that the construction of the said railway made it necessary for a bridge to be erected at the crossing of the railroad and public highway, in order to make this highway available to the public, the court instructs you that it was the duty of the railroad to erect and maintain such bridge so that the highway should be restored to *as passable a condition, and so kept, as was consistent with the use of the railroad company*, and if guard rails were required for that purpose, then it was the duty of the railroad company to place guard rails or banisters upon the bridge; and if you find that such was necessary, and that the railroad failed and neglected to provide and

maintain the same, and that the absence of the said guard rails or banisters was the proximate cause of the injury to plaintiff, then you will find for the plaintiff."

And instructed the jury as follows, at the request of the defendant:

"You are instructed, if you find from the evidence that the plaintiff's horse had a fit upon him, and was thereby rendered uncontrollable at the time of the accident, and that without such fit, and the consequent escape from control, the accident would not have happened, you will find for the defendant."

"If the jury believe from the evidence that plaintiff's horse was, at the time of the accident, blind, in one eye, and that this fact was known to plaintiff, and further believe from the evidence that a reasonable and prudent man would not have attempted to drive such a horse across such a bridge as this is described to be, in the manner that plaintiff attempted to drive his horse, then you are instructed that the plaintiff was guilty of negligence in so attempting to drive over said bridge, and if you find that such act on his part contributed to the injury, you will find for the defendant."

And refused to give the following at the request of the defendant:

"(You are instructed that there is no statute in this state prescribing that bridges of the character of this one should be provided with banisters or side rails), and unless you find from the evidence that the bridge in question was constructed and maintained as to banisters and side rails in a manner different from what a reasonable and prudent man would have done under the circumstances, then you will find that there was no negligence on the part of the railway company with reference to the construction and maintenance thereof, and you will find for the defendant." But modified it by

striking out the words in brackets, and gave it as amended over the objections of the defendant.

And the defendant asked, and the court refused to give, the following :

"You are instructed that if you find from the evidence that the plaintiff's horse became frightened, and by reason thereof plaintiff was unable to control him, and that without such fright the accident would not have happened, you will find for the defendant."

The jury returned a verdict in favor of plaintiff for $10,000. A motion for a new trial was filed by the defendant, and was overruled by the court. Exceptions were duly saved, and the defendant appealed.

In returning a verdict in favor of the plaintiff, the jury necessarily found that the evidence was insufficient to authorize them to return a verdict in favor of the appellant under the instructions given at its request. There being evidence to sustain them in that respect, we are concluded by the verdict to that extent ; and the appellee stands acquitted of contributory negligence as to this appeal.

The main questions for our consideration are presented by the instructions given and refused by the court, and they are :  (1)  What was the duty of appellant as to the construction of the highway crossing over its railway track ? and (2) what is its liability for the injuries received by the appellee, they being results of a leap of his horse from the bridge which (leap) was caused by fright ?

Duty of railroads as to highway crossings. As to the duty of railroad companies, the statutes provide that whenever they shall build a railway across any public road or highway in this state, they shall so construct the crossing, or so alter the roadbed of such public road or highway, that the approaches to the railroad bed, on either side, shall be made and kept in good repair, "at no greater elevation or depression than

one perpendicular foot for every five feet of horizontal distance, such elevation or depression being caused by reason of the construction of said railroad." Except as to the elevation or depression, the same duties rest upon them as are imposed on municipal corporations, which are bound to keep their streets in repair. In neither case is there any exact legal standard of care to be exercised in the construction or maintenance of public streets, roads, or crossings. They are only bound to use reasonable skill and diligence in constructing and maintaining in repair these highways, according to circumstances. They are not insurers of the safety of travelers, and are not bound to provide against everything that may happen on the highway, "but only for such things as ordinarily exist, or such as may be reasonably expected to occur." Where no danger may be anticipated, on account of the peculiar location of the highway, no vigilance is required for protection against liability for injuries; but where the road, bridge, or other public highway, by reason of its proximity to or construction over excavations, declivities, streams of water, or other places of peril, is manifestly so unsafe as to imperil the life or body of the traveler, it is the duty of the corporations or persons whose duty it is to keep it in repair to do whatever is practicable and reasonable to avert the threatened danger. If rails, guards or barriers be reasonably necessary for that purpose, and practicable, it is their duty to construct and maintain them in the places needed. *Ring* v. *City of Cohoes*, 77 N. Y. 83; *Plymouth Tp.* v. *Graver*, 125 Pa. St. 24; *Hey* v. *Philadelphia*, 81 Pa. St. 44; *Horstick* v. *Dunkle*, 145 Pa. St. 220; *Hunt* v. *Mayor*, 109 N. Y. 134; Wharton on Negligence (2 ed.), secs. 103, 104; 2 Dillon on Municipal Corporations (4 ed.), secs. 1005, 1007, 1015, 1019, 1020.

Corporations bound to build, or keep in repair, highways (bridges included) are not required to construct or maintain them in such a condition "that a traveler thereon may with safety run his horse at a furious rate of speed, or drive thereon unmanageable horses, nor are they bound to keep them in such condition that damage may not be caused thereon by horses which have escaped from the control of their driver and are running away." Highways are not built for such purposes. They are extraordinary incidents, out of the usual course of travel, for which no provision is required to be made. But, as all horses are, more or less, prone to shy and deflect from the beaten track, all public highways should be built and maintained in such a manner as to provide for the ordinary shying or starting of horses, and consequent deviations. Where practicable, the highway should be sufficiently wide and reasonably safe for that purpose, and guard rails or barriers should be constructed and maintained where necessary to protect the traveler against injuries from accidents which may be reasonably anticipated from such shying. To this end, the corporations charged with the duty of constructing or maintaining the highway are only bound to the exercise of ordinary care and diligence. *Baltimore, etc. Turnpike Co.* v. *Bateman*, 68 Md. 389, and see other authorities above cited.

Liability for injury at defective crossing.
As to the limits of liability in cases where an unruly or frightened horse is one of the causes of an accident on a public highway, there is a diversity of opinion, and some difficulty. In *Titus* v. *Northbridge*, 97 Mass. 258, the court said : "When a horse, while being driven with due care upon a highway, which a town is bound to keep in repair, becomes, by reason of fright, disease, or viciousness, actually uncontrollable, so that his driver cannot stop him, or direct his course, or exercise or regain control over his movements, and in this con-

dition comes upon a defect in the highway, by which an injury is occasioned, the town is not liable for the injury, unless it appears that it would have occurred if the horse had not been so uncontrollable. But a horse is not to be considered uncontrollable in this sense, if he merely shies or starts or is momentarily not controlled by his driver." *Fogg* v. *Nahant*, 98 Mass. 578; S. C. 106 Mass. 278. In Maine the courts take the same view. *Aldrich* v. *Gorham*, 77 Me. 287. "In such cases," says Earl, J., "it is said that the conduct of the horse is the primary cause of the accident; that there are two efficient, independent proximate causes, the primary cause being one for which the corporation is not liable, and as to which the traveler himself is in no fault, and the other being a defect in the highway; and hence, that it is impossible to determine that the accident would have happened but for the primary cause. But, within the rule laid down in those states, a horse is not to be considered uncontrollable that merely shies, or starts, or is momentarily not controlled by his driver." *Ring* v. *City of Cohoes*, 77 N. Y. 83.

In *Hinckley* v. *Somerset*, 145 Mass. 333, 336, the following rule was approved: "When the horse shies, and comes upon something which is claimed to be a defect, and which it is claimed the vehicle would not have come in contact with, except for the want of a suitable railing, the question for the jury is this: Can we say that, if there had been a suitable railing there, the control of the horse would have been regained by his driver, and the accident and injury would not have happened? If the plaintiff makes it appear, by a fair preponderance of all the evidence, that that was the state of things, then he cannot recover."

In *Baldwin* v. *Turnpike Co.* 40 Conn. 238, Minor, J., said: "The failure of a traveler to be continually present

with his team up to the time and place of injury, when that failure proceeds from some cause entirely beyond his control, and not from any negligence on his part, ought not to impose upon him the loss from such injury, particularly when the direct cause of the same is the negligence of some other party; the loss should be charged upon the party guilty of the first and only negligence with reference to the matter." And in the same case the rule is said to be this: "If the plaintiff is in the exercise of ordinary care and prudence, and the injury is attributable to the negligence of the defendants, combined with some accidental cause, to which the plaintiff has not negligently contributed, the defendants are liable. Nor will the fact that the horse of plaintiff was uncontrolled some distance before the injury change or in any way affect the liability of the defendants."

After stating the rule laid down in this case, the court, in *Ring* v. *City of Cohoes*, 77 N. Y. 83, said: "This appears to us to be the reasonable rule. It exacts no duty from municipalities which has not always rested upon them. They must use proper care and vigilance to keep their streets and highways in a reasonably safe and convenient condition for travel. This is an absolute duty which they owe to all travelers; and when that duty is not discharged, and, in consequence thereof, a traveler is injured, without any fault on his part, they incur liability. They are not bound to furnish roads upon which it will be safe for horses to run away, but they are bound to furnish reasonably safe roads; and if they do not, and a traveler is injured by culpable defects in the road, it is no defense that his horse was at the time running away, or was beyond his control."

The rule laid down and followed in the New York and Connecticut cases was adopted and enforced in the following and other causes: *Plymouth Tp.* v. *Graver*, 125 Pa. St. 24; *Burrell Tp.* v. *Uncapher*, 117 Pa. St.

353 ; *Horstick* v. *Dunkle*, 145 Pa. St. 220 ; *Hull* v. *City of Kansas*, 54 Mo. 598 ; *Hunt* v. *Pownall*, 9 Vt. 411 ; *Baltimore, etc., Turnpike Co.* v. *Bateman*, 68 Md. 389 ; *Byerly* v. *Anamosa*, 79 Iowa, 204.

The rule maintained by the New York and Connecticut courts, it seems to us, is reasonable, and sustained by the weight of authority. We see no good and sufficient reason for holding a municipality or corporation, which is bound to keep a highway in repair, liable for damages occasioned by a horse shying, starting or backing, and coming, or bringing a vehicle, in contact with a culpable defect in the highway, when at the time he was momentarily not controlled or uncontrollable, and that it is not liable if the horse had escaped control and was running away. In neither case is the corporation liable if it had done its duty in keeping the highway in repair, or the accident would not have happened if the rider or driver had exercised ordinary care, or would have occurred although the corporation had discharged its duties. In the former case the corporation is liable because it is its duty to use reasonable diligence to so construct and maintain the highway as to avoid accidents from the shying, starting, or backing of horses ; in the latter case it should be liable, because it had not done its duty, and the accident would not have happened if it had. *Palmer* v. *Andover*, 2 Cush. 600 ; *Houfe* v. *Town of Fulton*, 29 Wis. 296 ; 2 Dillon on Municipal Corporations (4 ed.), sec. 1005. In both cases the damage was occasioned by the neglect of the corporation to discharge its duties. Why should it not be liable in the latter as in the former case ? In the latter case the running away or action of the horse was an accidental occurrence for which the rider or driver was not responsible. *Ring* v. *City of Cohoes*, 77 N. Y. 83. In both cases the action of the horse and the neglect of the corporation were proximate and efficient causes of

the accident, and the injury is attributable to the latter ;
and the corporation should be liable, if at all, in either,
on the ground it failed to perform its duty to the injured
party. *Plymouth Tp.* v. *Graver*, 125 Pa. St. 24; *Ring*
v. *City of Cohoes, supra;* Shearman & Redfield on Neg-
ligence, 10 ; 2 Thompson on Negligence, p. 1085; 2
Dillon on Municipal Corporations, (4 ed.), sec. 1007,
1020.

Something was said in *Railway Co.* v. *Roberts*, 56
Ark. 387, which is, at least apparently, inconsistent
with the view we have taken in this case. In that case
the team of plaintiff's intestate ran away and carried
him, without his will, over the public highway crossing
of the railway track, where he was thrown from the
wagon in which he was riding, and killed by a passing
train. "There was testimony that the crossing was
defective; also that a wagon could have been driven
over it safely at an ordinary rate of speed." In speak-
ing of an instruction given to the jury by the trial court,
this court said : "The effect of that instruction was to
direct a verdict for the plaintiff if the jury found that
the injury to his intestate was caused by the defend-
ant's negligence, either in blowing off steam, or in failing
to keep the crossing in repair. It made the defendant's
liability the same in either case ; and the plaintiff was
thus allowed to recover if the jury found there was neg-
ligence as to the crossing, although they were unable to
find that there was any whatever in frightening the
team. *But all the evidence shows that the proximate
cause of the injury was the frightening of the team.* Bill-
man *v.* Railway Co. *76 Ind. 166. If that was due to the
company's negligence, it was liable for all the conse-
quences resulting directly from it; otherwise it was
liable for none of them. The deceased was not injured
in driving or attempting to drive over the crossing. He
was carried there involuntarily by the frightened team,*

*and the defendant was not responsible for his being there if its negligence was not the cause of the fright to the team.*  The question as to the company's liability would not be changed if it were shown that the condition of the crossing was perfect, and that the deceased would have been carried safely over it but for a defect in the wagon.  The condition of the crossing was not, therefore, material to the issue."

From this it appears that the court found that "*all* the evidence shows that the proximate cause of the injury was the frightening of the team;" that the deceased was carried to the crossing against his will; that the defendant was not responsible for his being there; and hence the instruction as to the crossing was improper.  It does not appear from the report of the case that there was any evidence showing that the accident was directly or indirectly occasioned through the failure of the defendant to perform its duty in keeping the crossing in repair.  At all events, it does not appear that the question in the present case was much considered, if at all, in *Railway Co.* v. *Roberts.*  What, therefore, was said in that case should not be controlling as to the question in this.

Were the instructions given in the case under consideration correct?  The trial court told the jury that it was the duty of appellant to erect and maintain a *safe* and suitable bridge across and over the ditch cut by it along the side of its railway track.  That is not true.  The appellant did not guaranty the safety of travelers in passing over the bridge.  The same duty rested upon it as upon municipal corporations bound to keep streets in repair, and it is subject to liability for a failure to perform them.  It was simply bound to exercise common prudence and ordinary care and diligence in making the bridge safe.

Instruction as to maintenance of bridge disapproved.

Degree of
diligence re-
quired in
maintaining a
crossing.

It is true that the court instructed the jury that, unless they found from the evidence that the bridge was "constructed and maintained, as to banisters and side rails, in a manner different from what a reasonable and prudent man would have done under the circumstances," then they should find "that there was no negligence on the part of the railway company with reference to the construction and maintenance thereof;" but it is also true that it instructed the jury that if "the construction of the railway made it necessary for a bridge to be erected at the crossing of the railroad and public way, in order to make this highway available to the public, then "it was the duty of the railroad to erect and maintain such bridge so that the highway should be restored to *as passable a condition, and so kept, as was consistent with the use of the railroad company*, and if guard rails were required for that purpose, then it was the duty of the railroad company to place guard rails or banisters upon the bridge." These instructions are not explanatory, but contradictory, of each other. If the latter had stopped at saying that it was the duty of the railroad company to erect and maintain a bridge in a passable condition, it would have meant that the bridge should have been placed and kept in such a condition that travelers could go over it, but it did not stop there. It meant more. It said that the bridge must be in "as passable a condition, and so kept, as was *consistent* with the use of the railroad company," implying that the bridge must be made and kept as safe as it could be consistently with the right of the company to use its railway track. If it did not mean this, why add, "and if guard rails were required for that purpose, then it was the duty of the railroad company to place guard rails or banisters upon the bridge?" The crossing would have been passable without guard rails or banisters. Construed in the manner indicated, the jury

were virtually informed by it that it was the absolute duty of the railroad company to place the guard rails upon the bridge, because they would unquestionably have added to the safety of the bridge, and would not have interfered with the use of the railway track by the appellant; and the two instructions are in conflict.

The latter instruction is objectionable for another reason. Construed in the manner indicated, it made it the duty of the jury to return a verdict in favor of the plaintiff on the conditions named therein, notwithstanding it had appeared to them that the accident would have happened if the defendant had exercised ordinary care and diligence in constructing and maintaining the bridge, and made the appellant liable when appellee was injured through no default of duty on its part.

As the judgment of the trial court will be reversed, we express no opinion as to the amount of the verdict.

Reversed and remanded for a new trial.