## STRANGE *v.* BODCAW LUMBER COMPANY.

### Opinion delivered July 2, 1906.

1. NEGLIGENCE—POND BESIDE HIGHWAY.—Where defendant company built a dam whereby the water was backed up along an unguarded public road, its liability to one whose horse was drowned thereby must depend, not upon the condition of the road itself, but upon the fact that the water which defendant placed along the road was so dangerous to travel that barriers were necessary to protect the public against danger, and that the failure of defendant to erect them caused the injury. (Page 494.)

2. SAME—LIABILITY OF PERSON BUILDING POND.—One who causes a deep pond to be constructed, either by making an excavation, or by erecting a dam, adjacent to a highway owes to the public the duty to erect and maintain barriers or guard rails or whatever else may be reasonably necessary to protect the public against the danger he has so created; and if, by reason of a failure to discharge this duty, a traveler along the highway or his property is injured, the traveler or owner of the propery can recover damages for the injury, unless his own carelessness, or that of his agent in charge of the property, contributed to the injury. (Page 495.)

3. SAME—EFFECT OF PERMISSION BY COUNTY JUDGE.—It is no defense,. where a pond was constructed along a public highway, and a horse driven on the highway was drowned therein, that the pond was placed. there by permission of the county judge, as he can not authorize acts. dangerous to the public, nor relieve one from the consequences of. his negligence. (Page 496.)

4. SAME—DEFENSE.—It is no defense, where a pond was constructed. beside a highway and a horse was drowned therein, that the defendant who constructed the pond had no authority to enter on the highway to erect guard rails or barriers. (Page 496.)

5. SAME—INSTRUCTIONS AS TO DUTY TO PUBLIC.—In defining the duty of one who constructs a dangerous pond along a highway the court. should not, as matter of law, charge that he must erect guard. rails, but should charge that he must do what was reasonably necessary to protect the public from danger, leaving it to the jury to determine whether such guard rails were, under the circumstances, necessary. (Page 496.)

6. SAME—CONCURRENT CAUSES OF INJURY.—Where plaintiff's horse, while being driven along the highway, became frightened at a pair of goats, and backed off the highway, and was drowned in a pond constructed by defendant, the latter can not escape liability for its. negligence because the accident would not have happened if the horse had not become frightened. (Page 497.)

7. PLEADING—IMMATERIAL AVERMENTS.—Where a complaint improperly sets out the evidence or a history of the transactions leading up to the essential or issuable facts, instead of alleging the latter merely, the court should not charge the jury that such immaterial allegations. must be proved. (Page 498.)

Appeal from Lafayette Circuit Court; *Charles W. Smith,.* Judge; reversed.

### STATEMENT BY THE COURT.

The facts in this case are stated in the opinion. On the trial the circuit judge gave among other instructions the following over the objection of the plaintiff, and to the giving of each of which the plaintiff duly saved exceptions at the time:

"5. The jury are instructed that, though they should believe from a preponderance of the evidence that there were defects in said roadway, and that the alleged accident was rendered possible thereby, yet, if they believe that the proximate cause of said accident was that said horse became frightened at a pair of goats driven to a sled by one Leo Couch, and that, but for said horse

becoming so frightened at said goats so driven to a sled, said accident would not have happened, your verdict should be for the defendant.

"7. The jury are instructed that if they believe from a preponderance of the testimony that the roadway where said accident is alleged to have happened was in a reasonably good and safe condition, and that, but for the fact that said horse became frightened at the pair of goats and sled driven by Leo Couch, said horse and buggy would have gone safely over said roadway without accident, then their verdict should be for the defendant."

*Searcy & Parks* and *W. E. Atkinson,* for appellant.

1. The erection of the pond against and on both sides of the road is admitted, and that it rendered travel dangerous is proved. It is a public nuisance. 1 Wood, Nuisance, § 248; *Ib.* §§ 74, 293, 266, 271, 345, 273-8, 290; 2 *Ib.* § 680; Cooley on Torts, 660; *Ib.* 619.

2. If the highway was rendered dangerous by the erection of the pond, one of the things reasonably to be expected and guarded against was the shying of horses. 2 Cush. 608; 20 S. E. 565.

3. The first instruction given for appellee erred in the enumeration of allegations, including therein as material, allegations which were not charged in the complaint, others that were admitted, and others that were not material, while it ignores the real cause of action.

4. It was also error to instruct the jury to find for the defendant if they found the accident was caused, not by defects in the roadway, but because the horse became frightened, etc., and backed off the roadway into the water. 1 Jaggard on Torts, 68; *Ib.* 70; 8 C. C. A. 109, 114; Cooley on Torts, 70; 16 L. R. A. 197.

*Moore & Moore,* for appellee.

1. Where two or more causes operate, resulting in an accident, the proximate cause must be understood to be that which in a natural sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred. If it can not be said that the result would inevitably have occurred by reason of defendant's negligence, plaintiff has not made out his

case. 1 Shearm. & Redf. on Neg. § 3 and note 3. See further as to proximate cause, cases in point, 9 B. & S. 303; Webb's Pollock on Torts, 46; 12 L. R. A. 432; 16 *Ib.* 106; 18 *Ib.* 100; 51 Me. 127; 38 Me. 207; 97 Mass. 266; 100 Mass. 49; 8 L. R. A. 82; 6 L. R. A. 194; 65 Tex. 274; 34 S. E. 778; 7 Wall. (U. S.), 52; 56 Ark. 287; *Ib.* 390; 58 Ark. 157.

2. The instructions given for appellee are on the theory that if the proximate cause of the injury was not the condition of the roadway nor the non-protection of the traveling public, but some cause separate therefrom, the verdict should be for the defendant. This is the law.

3. Even if some of the instructions are considered as surplusage, yet the evidence sustains the verdict, and the judgment should be affirmed. 54 Ark. 289; 56 Ark. 594; 62 Ark. 289.

RIDDICK, J., (after stating the facts.) This is an action by F. A. Strange against the Bodcaw Lumber Company to recover $100 of the company as damages for causing the death of plaintiff's horse.

The company owns a sawmill plant near the town of Stamps in Lafayette County of this State. The town was west of the mill plant, and a public road that entered the town from the east passed not far from the mill and crossed a small stream called Crooked Creek before reaching the town. In 1893 the lumber company made a large pond by constructing a dam across the valley of this creek. The public road crossed the road above where the dam was constructed. To prevent the water from overflowing the public road, the road was straightened, and a roadbed several feet high was constructed across the valley of this stream with a bridge across the channel of the creek. This work was done by the lumber company with the consent of the county judge and with the assistance of the road overseer. This elevated roadbed was about twenty feet wide, and near the creek was over ten feet high. After the company had erected its dam across the creek the water backed up around this public road, and at places was eight or ten feet deep on both sides of the road. When the roadbed was first constructed, posts with connecting rails were placed along the edge of the roadbed to prevent wagons and teams from running off the dump into the pond. But, as the roadbed was raised from time to time by placing loads of

dirt and sawdust thereon, the surface of the roadbed was finally raised about the rails, so that nothing but the posts were left above the surface of the roadway. After this roadbed was constructed, it was under the control of the road overseer as one of the public roads of the county until, by an extension of the limits of the town of Stamps, it came within the limits of the town, and passed to the control of town authorities as a public street.

On the 5th of September, 1904, while this road or street was in this condition, Alvin Strange, a brother of the plaintiff, drove the horse of plaintiff to the town of Stamps to attend services at a church. In the buggy with him were his sister and another young lady. It was night, and while they were crossing this road and approaching the bridge over the creek the horse became frightened at a pair of goats hitched to a sled which a boy had driven upon the bridge. The horse, on being frightened by the goats, began to back, and before he could be stopped he backed the buggy over the side of the roadbed into the water, which was at that place about ten feet deep. The occupants of the buggy got out and escaped, but the horse was drowned. The plaintiff, as the owner of the horse, brought this action against the mill company, as before stated, to recover damages for the death of his horse. The jury returned a verdict for the defendant, and judgment was rendered accordingly, and the appeal taken by the plaintiff brings the case before us for review.

We will state at the outset that the defendant can not be held responsible for the condition of the roadway itself. It can not be held responsible for the fact that the road at this point was elevated on an embankment several feet high, for this was a public road, and defendant had no right to reduce the height of this embankment or to change it. In order for the plaintiff to recover, he must show that the water which defendant placed around and against this road was so dangerous to travel that barriers were necessary to protect the public against the danger, and that the failure of the defendant to erect them caused the injury.

The law is now well settled that it is unlawful to make an excavation or to put a dangerous obstruction of any kind adjoining

a public highway, and leave it in a condition to endanger the safety of those who are traveling thereon and who themselves are in the exercise of ordinary care. When one makes an excavation of that kind on his own grounds adjoining the public highway, he should exercise due care to protect the public against the danger to accidents caused by such excavations, and, if necessary, should erect a fence or guard rails for that purpose. This question was discussed and the law clearly stated in the case of *Beck* v. *Carter,* 68 N. Y. 283. See also *Barnes* v. *Ward,* 9 C. B. (Eng.), 392; *Hadley* v. *Taylor,* L. R. 1 C. P. 53; 1 Wood on Nuisances (3 Ed.), § 271, and cases cited.

The rule would be the same if one, after making an excavation adjoining the public highway, should fill it with water, and thus make a deep pond adjoining the highway. If such pond was dangerous to travelers on the highway who were exercising ordinary care, it would be the duty of the owner to erect barriers or guard rails or do whatever might be necessary to protect the public against the danger he had created. And his duty would be the same whether the pond was caused by making an excavation adjoining the highway and filling it with water, or by damming a stream which crossed the highway, thus causing the water to back up on both sides of the highway. In either case it would be his duty to so exercise his own rights as to avoid injury to the public; and if the danger was such that it could be foreseen that a fence or railing was required to guard the public against danger, it would be the duty of the owner to put them up.

Now, in this case it is admitted that the defendant constructed an embankment across a stream, and thus backed up the water on both sides of the public highway where it crossed the valley of the stream. If the presence of this water added nothing of danger to travelers on the highway who themselves exercised ordinary care, then the defendant was guilty of no wrong, and was not responsible for this injury. But if the water made the road more hazardous to travelers, it became the duty of the defendant company to do what was reasonably necessary to guard the public against danger caused by this act of damming the stream. If the danger was such that guard rails were required to protect travelers, they should not only have been provided, but kept in repair so as to serve the purpose intended. And if, by reason of the

failure of the company in this respect, a traveler along the public highway or his property was injured, the traveler or owner of the property can recover damages for the injury, unless his own carelessness, or that of his agent in charge of the property, contributed to the injury.

The case then turns first on the question of whether the presence of this water on either side of the public road was a source of danger to travelers on the highway who themselves exercised due care. If this was so, it was the duty of the company to erect guard rails or do whatever was reasonably necessary to protect the public against the danger; and if it failed to do so, and by reason of such negligence the plaintiff's horse was drowned, the company is liable, unless the driver of the horse was guilty of negligence contributing to the injury.

The fact that the pond was put there by permission of the county judge does not alter the case, for the permission of the county judge can not authorize acts dangerous to the public, or relieve the defendant from the consequences of its own negligence. Nor is it any defense for defendant to say that it had no authority to enter on the public highway to erect guard rails or barriers. If the danger to travel on the highway from this pond was of such a nature as to make it necessary to erect barriers to protect the public from danger, then the defendant would either have to erect the barriers or drain the pond. But it is not shown that it applied for permission to erect barriers, nor is there any ground to believe that a request of that kind would have been denied had it been made to the proper authorities, so we need not speculate upon what would have been the position of defendant if, before the accident happened, it had applied for permission to erect barriers between the pond and the highway, and this permission had been refused.

The instructions given by the court at the request of the plaintiff were somewhat too stringent, for, if the pond was shown to be dangerous to travel, the instructions declared as a matter of law that the defendant should erect guard rails, while in our opinion if the pond was dangerous to travel on the highway the defendant was then required to do what was reasonably necessary to protect the public from this danger, and it was for the jury to say whether, under the circumstances, guard rails should

have been erected or not, and whether such injury might have been foreseen and avoided.

On the other hand, the fifth instruction and other instructions given at the request of the defendant were too favorable to defendant, for they told the jury that if the proximate cause of the accident was that the horse became frightened at a pair of goats hitched to a sled, and that, "but for said horse becoming frightened at the goats driven to the sled, the accident would not have happened," they should find for defendant. As the undisputed evidence shows clearly that the accident would not have happened but for the fact that the horse became frightened at the goats, this fifth instruction was virtually an instruction to find for the defendant. The fact that the horse became frightened at the goats was no doubt one cause of the injury, but that did not necessarily relieve the defendant from liability. The horse did not run away. He began to back and became to a certain extent uncontrollable, but he did not get completely beyond the control of the driver until the buggy was backed over the edge of the roadway and went into the pond, dragging the horse after it. Horses, when frightened, often back away from the object that alarms them, but on being encouraged by their driver frequently regain their composure and move on again. So, under the facts of this case, it was for the jury to say whether, if there had been guard rails or something to prevent the buggy from going into the pond, this accident would have happened. If, notwithstanding the fright of the horse, the accident would not have happened if there had been guard rails, and if the absence of guard rails was due to the fault of the defendant, then its negligence as well as the fright of the horse is a proximate cause of the injury. If that was so, then, as the plaintiff was not responsible for the presence of the goats on the bridge, or the fright of the horse, he can recover if the driver in charge of the horse was guilty of no negligence contributing to the injury. We are therefore of the opinion that the fifth instruction and some of the other instructions given for the defendant were misleading and erroneous. *St. Louis, I. M. & S. Ry. Co.* v. *Aven,* 61 Ark. 141.

Counsel for the defendant have cited *Hill* v. *New River,* 9 B. & S. 303, and other cases which hold under similar instructions that no recovery can be had for the reason that the fright of the

79—32

horse, and not the absence of barriers, is the proximate cause of the injury. But these cases were considered by this court in case of *St. Louis, I. M. & S. Ry. Co.* v. *Aven,* cited above, where it was held that the fright of the horse and the absence of barriers were both causes directly contributing to the injury; and if one of these contributing causes was due to the fault of the defendant, the plaintiff could recover for the injury caused thereby, when he himself was free from negligence. This case is stronger for the plaintiff for the reason that the horse was not in this case running away nor completely beyond the control of the driver, but was only backing away from the object that alarmed him.

The first instruction given for the defendant was too long and involved, and submitted questions to the jury, some of which were not controverted, and others immaterial. It is true that there was some excuse for this instruction, in that it followed, to some extent, the statement in the complaint, which contains a number of allegations which were unnecessary to make in the complaint. The complaint should allege the substantive or issuable facts, and it is unnecessary to set out the evidence, or a history of the transactions leading up to the essential or issuable facts. Bliss on Code Plead. (3 Ed.), § 206. But the fact that matters of evidence and other unnecessary allegations were set out in the complaint does not justify the court in telling the jury that such allegations must be proved when they are immaterial. Among other allegations which the instruction told the jury that the plaintiff must prove to make out his case was that "the defendant erected across the stream and overflowed ground a bridge and dump and roadway," and continued up to the time of the accident "to maintain and have supervision of the keeping up of said dump and highway," etc. But this was not correct, for the right to recover in this case depends, not on whether the defendant constructed and maintained this roadway, but on whether it, by banking this water around a public highway, created a danger to the public, and then negligently failed to take proper precautions to guard the public against injury.

For the errors indicated the judgment is reversed, and cause remanded for a new trial.