ST. LOUIS SOUTHWESTERN RAILWAY COMPANY AND ST.
LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY
COMPANY *v.* KENDALL.

## Opinion delivered July 13, 1914.

1. NEGLIGENCE—JOINT LIABILITY OF TWO DEFENDANTS—RAILWAY COL-
LISION.—Both defendant railroad companies will be liable in dam-
ages for an injury to a conductor on the train of one of them,
when two trains collided at a crossing, and when both were neg-
ligent, and either could have avoided the injury by the exercise
of ordinary care.

2. DAMAGES—PERSONAL INJURIES—ELEMENTS—BASIS OF AWARD.—Plain-
tiff, a railroad conductor, was injured in a collision by the negli-
gence of two defendant railroads. *Held*, in assessing his damages,
the jury should not estimate the entire life expectancy of plain-
tiff, at the full salary he was receiving when injured, but should
take into consideration the probability of loss of time from sick-
ness, loss of position and decreased physical force with advancing
years.

3. DAMAGES—PERSONAL INJURIES—AMOUNT—BASIS OF AWARD.—Com-
pensation for damages due to negligence must be awarded on a
reasonable basis, and the jury can not give any amount they
please, although the amount is largely within the reasonable dis-
cretion of the jury.

4. DAMAGES—EXCESSIVE AWARD—PRACTICE.—Where the jury, in an ac-
tion for damages for personal injuries, makes an excessive award
of damages, the judgment will be reduced to a reasonable amount
on appeal.

Appeal from Monroe Circuit Court; *Eugene Lank-
ford,* Judge; modified and affirmed.

### STATEMENT BY THE COURT.

This is an action for damages for personal injury to
appellee suffered in a collision between the passenger
train of the St. Louis, Iron Mountain & Southern Rail-
way Company, on which appellee was conductor, and a
local freight train of the St. Louis Southwestern Railway
Company at the crossing of the tracks near Clarendon.
The tracks of this railway company, hereafter called the
Cotton Belt, and the Iron Mountain cross each other
nearly at right angles, and on the morning of the acci-
dent the train on which appellee was conductor left Clar-
endon about 7:30, and whistles were blown for the street

and railway crossings. The train slowed down, the porter got off and walked ahead to the crossing, and flagged the engineer to come on. He started up with an increased speed, and after his engine had passed the crossing, he heard a noise that attracted his attention, and discovered the train on the Cotton Belt track approaching. It was at the stop-board, and the wheels were sliding. He immediately increased the speed of his train to clear the crossing and get out of the way of the other train. The Cotton Belt engine struck the back end of the negro coach and the front end of the white coach, and went through the train, wrecking it and crushing and bruising appellee's body, breaking three ribs, dislocating his shoulder and cutting a bad gash in his head. The Cotton Belt train had been switching and was standing on the track about 530 feet from the crossing when it started up. The porter who signaled the Iron Mountain train to cross said he did not see the Cotton Belt train on its track at the time. That his view was obstructed by some cars near the seed house, although many others testified that there were no cars on any track that could have prevented his seeing the train. When the engineer of the Cotton Belt train started up, he took his orders he had received at Brinkley, and was reading them over again, and did not discover the Iron Mountain train until he was within 175 feet of the crossing, too close to stop and avert the collision. He was surprised and stunned at the sight, but immediately put his brakes in emergency, and tried to stop his train.

The evidence shows that the enginemen on either train could have discovered the presence of the other train by looking, five or six hundred feet before reaching the crossing, and that none of them looked. The Iron Mountain engineer said that he relied upon his flagman, and thought he had the right-of-way, and did not look on that account, and the other engineer was reading his orders.

A witness who was some distance below the crossing saw the porter on the crossing signaling the Iron Moun-

tain train to come on, and he also saw the Cotton Belt train upon the track beyond, coming. Did not know why the porter did not see it.

Another witness was near the crossing south of both tracks, and said the Iron Mountain train was between her and the north side. She saw the negro signal the Iron Mountain train to cross, and could see the Cotton Belt train coming at the time; saw both trains. The Iron Mountain train was at the crossing a little ahead, and after it started over the crossing, she could not see the Cotton Belt train coming down the track.

The appellee was sixty-two years old at the time of the injury with a life expectancy of 12 and 86/100 years. He was in bed about three months, the result of the injury, and peritonitis developed and aggravated his suffering. He claims to be suffering now from neuritis, which grows worse during spells of bad weather. He is permanently injured and totally incapacitated for doing manual labor. He was earning $1,600 a year at the time of the injury as conductor, and making about that much out of his store at Holly Grove. He estimated his income at $3,000 a year. The jury returned a verdict against both the railroad companies for $18,000 for pecuniary loss, and $20,000 for bodily injury, pain and suffering, and from the judgment, both the companies appeal.

*E. B. Kinsworthy, P. R. Andrews* and *T. D. Crawford,* for appellant, St. Louis, I. M. & S. Ry. Co.

1. The verdict is excessive. No such allowance as $24,000 has ever been sustained.

2. When two trains approach a crossing at the same time, the rule is that the one which first reaches and stops at the post upon its line is entitled to precedence in crossing. 54 F. 649; 52 Am. & E. R. Cas. 462; 38 Minn. 455; 116 Ind. 60-2; 97 Ala. 515; 13 So. 408. Trainmen on one road who comply with the statute on approaching a crossing have a right to assume that trainmen on the other road will also comply with it. 97 Ala. 515; 13 So. 408; 65 Tex. 32. Agreements as to crossings are binding.

42 A. & E. R. Cas. 233. There is no presumption of neg-
ligence in favor of an employee engaged in operating a
train, as against the employer. 113 Mo. 70; 20 S. W. 896;
100 Ark. 422; 60 Fed. 993. To warrant a finding that
negligence was the proximate cause, it must appear that
the injury was the natural and probable consequence of
the negligent or wrongful act, and ought to have been
foreseen. 93 Va. 49; 57 Am. St. 786. Ordinarily, the
question of proximate cause is for the court where the
facts are not in dispute; if in dispute, for the jury. 139
Pa. St. 363; 10 Allen. 535.

3. In view of these authorities, there was error in
the charge. The court should have directed a verdict for
the Iron Mountain Railway Company.

*Sam H. West* and *J. C. Hawthorne,* for St. Louis
Southwestern Railway Company.

1. The third and fourth instructions asked for de-
fendant railway company should have been given. Plain-
tiff was in charge of the train and responsible for the col-
lision. The question of plaintiff's, and the employees un-
der him, negligence should have been submitted to the
jury. 53 Mo. App. 276; 78 Ill. 619; 50 N. E. 729. The
negligence of a son is imputable to a father in cases like
this. So is the negligence of those whom the injured fel-
low-servant controls or directs. 25 N. E. 355; *Ib.* 863; 71
N. E. 799; 41 N. E. 629.

2. The verdict is excessive.

*Thomas & Lee,* for appellee.

1. Both defendants are liable as joint tort-feasors,
and the case was submitted to the jury under proper in-
structions. Both were negligent. 63 Ark. 177; 29 Cyc.
565; 61 Ark. 381; 23 *Id.* 112; 203 Ill. 518; 33 Cyc. 726.

2. Verdict not excessive. 13 Cyc. 38, 39-245; 92
Ala. 209; 87 Ga. 69; 114 Ga. 183; 84 *Id.* 297; 74 *Id.* 851; 13
Cyc. 47; 11 L. R. A. 43; 82 Kan. 318.

3. As to separate liability. 51 Fed. 649; 73 Ark.
112-116; 27 L. R. A. (N. S.) 209.

Kirby, J., (after stating the facts). (1) Neither of the appellants complain of the instructions given the jury on the part of the appellee, both insist that the verdict is excessive, and each contends that but for the negligence of the other, the accident would not have occurred, and that any negligence on its part was not the proximate cause of the injury. There is no doubt but that those in charge of the Cotton Belt train, by keeping a lookout, could and would have seen the Iron Mountain train approaching the crossing in time to have avoided the injury by stopping the train if they had been in the exercise of ordinary care. Neither is there any doubt but that the enginemen of the Iron Mountain train could also have discovered the Cotton Belt train by the exercise of ordinary care in time to have prevented the collision. Both of the railroad companies were negligent, and but for the negligence of each, the collision would not have occurred, and the concurring negligence of both produced the injury for which both are liable. Cyc. lays down the following general rule: " * * * Where an injury is sustained by reason of the joint or concurrent negligence of two railroad companies, * * * plaintiff may sue both jointly, and it is not necessary that there should be a breach of a joint duty or any concerted action on the part of the defendants, but it is sufficient if their several acts of negligence concur and unite in producing the injury complained of; nor is it material that one of the defendants owed the plaintiff a higher degree of care than the other." 33 Cyc. 726.

In *City Electric Street Railway* v. *Conery,* 61 Ark. 381, where an injury was received by coming in contact with a telephone wire charged with electricity communicated from a trolley wire, the court said: "If the injury was the result of concurring negligence of the two parties, and would not have occurred in the absence of either, * * * the negligence of the two was the proximate cause of the same, and both parties are liable." See, also, *St. Louis, I. M. & S. Ry. Co.* v. *Shaw,* 94 Ark. 15; *St. Louis*

*S. W. Ry. Co.* v. *Mackey,* 95 Ark. 297; *Strange* v. *Bodcaw Lumber Company,* 79 Ark. 490.

(2)   It is contended that the damages are excessive, and this contention must be sustained.  The appellee was sixty-two years old with a life expectancy of virtually thirteen years, and earning $1,600 a year salary at the time of the injury.  He is permanently and totally disabled from performing manual labor, and can not resume his duties as conductor, in which he had been engaged for twenty years or more.  He suffered great pain from the dislocated shoulder, the broken ribs, the cut on the back of his head and other bruises, and had an attack of peritonitis before his recovery, and was confined· to his bed for about three months.  His wounds are all healed, but he still suffers from neuritis, and will probably continue to do so throughout his life.  The pain is worse during bad weather.  Appellee had passed beyond life's meridian well down on the further slope.  There was no hope of promotion in prospect for him,· and but thirteen years of life in expectancy.  It is possible, but not probable, that he would have continued physically able to discharge the duties of his position, and retained it until the age of seventy-five, the end of his expectancy.  Virtually, $14,100 will purchase an annuity that would yield $1,600 a year, the amount of salary appellee was receiving, but this estimates the entire life expectancy at the full salary for the period without taking into consideration, as ought to be done, the probability of loss of time from sickness, loss of position and decreased physical force with advancing years, and the jury allowed even more than this, and their verdict is excessive.  Appellee's business at Holly Grove, it is true, was shown to be yielding him an income also, but the injury can not be said to have caused him loss on that account, for he was not personally conducting the business, and so far as the proof shows, he can devote more directing attention to it now than he was doing before the injury.

(3-4)   The jury awarded $20,000 damages for pain and suffering.  Appellee is well of his injuries now after

three months of suffering and confinement to his bed, save for the neuritis that will probably afflict him to the end. He suffered much, but, as said in *St. Louis, I. M. & S. Ry. Co.* v. *Brown,* 100 Ark. 124, ''There is no market where pain and suffering are bought and sold or any standard by which compensation for it can be definitely ascertained and the amount actually endured determined,'' and compensation therefor must be considered on a reasonable basis, and the jury can not give any amount they please, although the amount of damages must be left largely to the reasonable discretion of the jury. The court is of the opinion that the amount awarded for pain and suffering is excessive also. *St. Louis, I. M. & S. Ry. Co.* v. *Brown,* 100 Ark. 123; *Aluminum Company* v. *Ramsey,* 89 Ark. 541. Upon the whole case, our conclusion is that the award of damages for each cause of action is excessive, and that the judgment for both causes should be, and is reduced, to $20,000, and as modified, it will be affirmed.

It is so ordered.