Missouri Pacific Railroad Company *v.* Riley.

Opinion delivered April 25, 1932.

*R. E. Wiley* and *Richard M. Ryan,* for appellant.

*Murphy & Wood,* for appellees.

BUTLER, J. On the 28th day. of March, 1930, two model T Ford cars, loaded with students of the Hot Springs Junior High School, left the school grounds at the noon hour to be driven about the city during the noon intermission. There was no understanding between the two groups of students, each acting independently, but the common purpose was to return in time to be present at school at the termination of the noon recess. The first car to leave the school grounds was a Ford sedan driven by Paul Pittman, 15½ years old. In this car was another boy, 15 years of age, and three girls, two of them 13 and one 14 years old. In the second car, which left the school grounds within a short interval and continued behind the first car at a little distance, was Ewell Johnson, the driver, who was seventeen years old, and two other boys, one 14 and the other 15 years of age. The two cars were driven about the town for a short time and finally entered

upon Washington Avenue, which runs from east to west. They turned west on this street, thinking it would lead them to a street by which they could return to school, and, after going a short distance, ran into an excavation or cut in which the railroad of appellant company ran, with the result that one of the boys was killed and the other students injured to a greater or less degree.

Eight separate suits were brought against the appellant company to recover damages because of the injuries sustained, which suits were consolidated for trial in the court below, and as consolidated are here on appeal from verdicts and judgments in favor of the appellees.

In the complaints the allegation of negligence against appellant was that it made an excavation across Washington Avenue about thirty feet deep, and as many wide and left the same unprotected and unguarded. It was further alleged that, while driving along Washington Avenue, and in the exercise of ordinary care, by reason of the negligence of the appellant in leaving the cut unprotected, the automobiles fell into the cut, demolishing them and causing the injuries to the occupants thereof.

The appellant answered, denying the allegation of negligence, and set up as an affirmative defense (1) that the accident was occasioned by the contributory negligence of the drivers and the occupants of the cars, and (2) that whatever injuries were sustained were due to the negligence of the city of Hot Springs in not placing a barricade or guard to warn persons using the street of the existing danger.

The evidence introduced tended to establish the following facts; Prior to the year 1900 Washington Avenue and Hendrick Street had been laid off and established, and in that year the predecessor of the appellant company obtained the right from the city to lay its track or railway through the city and across the intersection of Washington Avenue and Hendrick Street. Washington Avenue running east and west and Hendrick Street crossing it approximately at a right angle. The line of railway at this point ran about north and south, and at the

intersection of the two streets a deep cut was made, taking a part of Hendrick Street and crossing Washington Avenue. After the excavation was made, Washington Avenue seems not to have been worked westward, but was maintained as a street eastward, being worked for a number of years by laborers with pick and shovel to within a short distance of the cut, estimated at from 35 to 65 feet. After the city procured road machinery the street was worked with tractors and graders. The last time it seems to have been worked was about two or three months before March 28, 1930. Within a short distance of the cut, on either side of Washington Avenue, houses had been built which had been standing for many years, and on the date of the accident in question the roadway was smooth and adapted to vehicular traffic, but had small hills and valleys between, there being two small hills with an intervening valley just before reaching the cut. The crest of the last hill was about 65 feet from the cut.

Forty-two assignments of error were presented in the motion for a new trial, and are argued by appellant in its brief. It will be impracticable to take up and discuss each of these assignments in detail or to review all of the testimony. To do so would unduly extend this opinion, and such evidence as is necessary for an understanding of the case will be briefly set out.

Exception was saved to the qualifications of one of the jurors on the panel because it was shown upon his examination that he was a member of the board of aldermen of the city of Hot Springs. The exception to the competency of the juror was based on the theory that the negligence of the city was the proximate cause of the injuries, and, as the city was interested, the fact that the juror was an alderman disqualified him. It is not necessary to say whether or not this juror was disqualified, for there is no showing of prejudicial error, since it is not shown that the appellant had exhausted all of its peremptory challenges. *Polk* v. *State,* 45 Ark. 165; *St. L., I.*

*M. & S. R. Co.* v. *Aiken,* 100 Ark. 437, 140 S. W. 698; *Caughron* v. *State,* 99 Ark. 462, 139 S. W. 315.

Certain exceptions were saved to the ruling of the court on the admission of the testimony of the witness Annen and of witnesses who were permitted to testify that the two boys who were driving the cars were careful and competent drivers. Annen was asked the question if while he was city engineer he did anything to protect travelers on the avenue from the dangers of the cut, and answered that he did nothing. The court held this testimony immaterial, and refused to admit it. The action of the court was proper because Annen had no connection with the city at the time of the accident or for a considerable period before, and it is also undisputed that neither the city nor the appellant company placed any barricade or danger signal to warn the public of the existence of the excavation before March 28, 1930.

On the question of contributory negligence of the occupants of the cars, the allegation was made that the drivers were incompetent because of immature age and lack of experience. This raised the question of competency, and it was not error on the part of the court to permit witnesses who were acquainted with the skill and experience of the drivers of the cars to testify that they were careful and competent drivers. This was not an expression of a mere opinion, but of the knowledge of the witnesses acquired from full opportunity to observe. *Bush* v. *Brewer,* 136 Ark. 246, 206 S. W. 322; *Cahill* v. *Bradford,* 172 Ark. 69, 287 S. W. 595.

Exceptions were saved to the instructions given by the court at the request of the appellees, and also to the court's refusal to give a number of instructions asked by the appellant. The objections made to the instructions given for the appellees and those refused on behalf of the appellant appear to be based mainly on the theory that the appellant was not culpable because it was the duty of the city authorities to safeguard the streets for the traveling public, and that such omission absolved the appellant from blame. We are of the opinion that there

was no error in this regard. If there was negligence on the part of the city, it was not an intervening efficient cause, but a concurrent one. We think that the instructions given at the request of the appellant fully and fairly presented to the jury the issues properly to be submitted to them.

A statement of the applicable law is made in the case of *St. L. & C. R. Co.* v. *Aven,* 61 Ark. 141, 32 S. W. 500, where, in speaking of the duty of railroads to travelers on highways which are crossed by their lines, the court said: ''They are not insurers of the safety of travelers, and are not bound to provide against everything that may happen on the highway, 'but only for such things as ordinarily exist, or such as may be reasonably expected to occur.' Where no danger may be anticipated, on account of the peculiar location of the highway, no vigilance is required for protection against liability for injuries; but where the road, bridge, or other public highway, by reason of its proximity to or construction over excavations, declivities, streams of water, or other places of peril, is manifestly so unsafe as to imperil the life or body of the traveler, it is the duty of the corporations or persons whose duty it is to keep it in repair to do whatever is practicable and reasonable to avert the threatened danger. If rails, guards or barriers be reasonably necessary for that purpose, and practicable, it is their duty to construct and maintain them in the places needed.''

The evidence in this case is undisputed that the appellant and its predecessor operated the railroad for many years through a deep cut across Washington Avenue at its intersection with Hendrick Street, during all of which time it failed to erect any barrier at the edge of the cut across the avenue or to place any danger signal to warn approaching travelers of the presence of the cut. There is also evidence tending to show that this street was used by horse-drawn vehicles before the age of the automobile, and for some time before the injuries to the children on March 28, 1930, it was adapted to travel by automotive vehicles. This raised the question

as to whether or not the appellant should have antici-
pated danger to travelers, and whether its failure to
erect danger signals or other safeguards was negligence.
This issue, we think, was properly presented to the jury
in instructions given on motion of the appellees.

The appellant argues that, because its line of rail-
road and the excavation were lawfully made on due au-
thority from the city of Hot Springs, therefore there
was no obligation on its part to warn of the existence of
the excavation, but that this was the duty of the city.
This contention is unsound. In *Strange* v. *Bodcaw Lum-
ber Co.,* 79 Ark. 490, 96 S. W. 152, 116 Am. St. Rep. 92,
a drain over a highway crossing was dammed by the per-
mission of the county judge, so that a pond was formed
on each side of the highway into which drain a horse fell
and was drowned. The case was defended on the ground,
among others, that the pond was made under rightful
authority, and that to protect travelers on the highway
the defendant would be obliged to enter on the same to
erect protecting barriers, which it had no authority to do.
In dismissing this contention, the court said:

"The fact that the pond was put there by permis-
sion of the county judge does not alter the case, for the
permission of the county judge cannot authorize acts
dangerous to the public, or relieve the defendant from the
consequences of its own negligence. Nor is it any defense
for defendant to say that it had no authority to enter on
the public highway to erect guard-rails or barriers. If
the danger to travel on the highway from this pond was
of such a nature as to make it necessary to erect barriers
to protect the public from danger, then the defendant
would either have to erect the barriers or drain the pond.
But it is not shown that it applied for permission to erect
barriers, nor is there any ground to believe that a request
of that kind would have been denied had it been made to
the proper authorities, so we need not speculate upon
what would have been the position of defendant if, before
the accident happened, it had applied for permission

to erect barriers between the pond and the highway, and this permission had been refused.''

This position taken by the appellant that it was the duty of the city authorities to safeguard the highway and its failure to do so exonerates the appellant is not tenable. Assuming that it was the duty of the city to warn those traveling west along Washington Avenue of the danger ahead, its failure to do so did not relieve the appellant from responsibility, for it was its active agency which brought into being the dangerous situation, and it was bound to take cognizance of the natural consequences to those traveling along the avenue who might be ignorant of the situation and have no warning as they approached. *So. Exp. Co.* v. *Texarkana Water Co.,* 54 Ark. 131, 15 S. W. 361; *City Elec. Ry. Co.* v. *Conery,* 61 Ark. 381, 33 S. W. 426, 31 L. R. A. 570, 54 Am. St. Rep. 262; *St. L. S. W. Ry. Co.* v. *Kendall,* 114 Ark. 224, 169 S. W. 822; *Jenkins* v. *Midland Valley Ry. Co.,* 134 Ark. 1, 203 S. W. 1. In these cases the general rule is stated that, where the negligent act of two persons concur to produce an injury, the author of either negligent act is liable to the injured party for the damages sustained. See also *Jonesboro, L. C. & E. R. Co.* v. *Wright,* 170 Ark. 815, 281 S. W. 374.

On the question of contributory negligence of the drivers and occupants of the cars, the testimony is in conflict. There was testimony on the part of the appellant tending to show that the cars were being driven from 25 to 30 miles an hour without heed as to the way ahead, and that driving beyond the end of the avenue and into the cut was the result of excessive speed and heedless conduct. On the other hand, there was testimony of the occupants of the cars themselves, corroborated by the testimony of other witnesses, to the effect that they were driving not faster than fifteen or twenty miles an hour, looking ahead, and that they were unacquainted with Washington Avenue and ignorant of the excavation across it; that their view was obscured by the crest of the

hill until they reached its summit and then first saw the cut; that they did all they could to check the speed of the cars and avert the disaster; that the brakes were applied, but the momentum already acquired and the nature of the ground was such that the cars "slided" down into the cut. This presented a question of fact as to whether or not the drivers and occupants of the cars were in the exercise of ordinary care, which question the jury considered under proper instructions.

The amount of the damages awarded to the several parties injured and to their parents is not questioned, and as we find no error, and the testimony is sufficient to support the verdicts, the judgments must be affirmed. It is so ordered.