## DEEP ROCK OIL CORPORATION v. GRIFFETH.

No. 24394. June 2, 1936.

W. F. Semple and Wilcox & Swank, for plaintiff in error.

Thomas A. Higgins, for defendant in error.

OSBORN, V. C. J. This action was instituted in the district court of Payne county by F. L. Griffeth, hereinafter referred to as plaintiff, against the Deep Rock Oil Corporation, hereinafter referred to as defendant, wherein plaintiff sought to recover damages on account of the pollution of certain streams traversing his land. The cause was tried to a jury and a verdict was rendered in favor of plaintiff; from a judgment thereon defendant appeals.

Plaintiff alleged that he was engaged in the business of farming, stock raising, and dairying, and was the owner or lessee of certain pasture lands; that the defendant was engaged in the operation of oil wells upon lands in the vicinity of plaintiff's land; that on certian dates defendant permitted salt water, oil, and other refuse and deleterious substances to escape from its operations and flow into Wild Horse creek, which emptied into Euchee creek, and that both of said creeks traversed the lands of plaintiff and constituted his water supply for his cattle; that said cattle drank the poisoned and polluted water and by reason thereof five cows lost their calves and became sick and deteriorated in value; two heifers died, and certain other cattle were injured and damaged; that it became necessary to move the cattle to other pastures and to procure other water; that all of said damage was caused by the acts of defendant in permitting the escape of the pollutive substances into Wild Horse creek.

The various items of damage claimed amounted to the sum of $2,953. The verdict of the jury was for the sum of $1,239.

It is contended first that the trial court was without jurisdiction for the reason that the petition stated a cause of action for injuries principally to real property and that the real estate was located in Lincoln county and not in Payne county. There is no merit in this contention. The allegations of the petition and the proof offered in support thereof show that no claim whatever is made for damages to any portion of the real property involved.

Defendant contends that the trial court

erred in the admission of certain evidence relating to the measure of damages. Plaintiff testified that as a result of drinking the salt water five cows lost their calves, and in regard to the value of the calves and the damage thereby sustained to the cows, plaintiff was permitted to testify as follows:

"Q. I will ask you if you know what was the value of those five calves which were lost at that time? (Objection by counsel for defendant.) A. There is no set value on an unborn calf. Q. What would have been the value of those calves the five cows lost, five calves, what was the value of those calves or would have been their value if they had been born? (Objection by counsel for defendant.) A. If they were heifer calves, they would have been worth 40 to 50 dollars. If they were steer calves, they wouldn't have been valued at very much. Q. Well, fix a value on them? A. I expect ten or 15 dollars would have been the average of them. Q. These five cows that lost these five calves, were they affected in any way by the use of this water? A. They drank this water and lost the calves; I don't know whether that is what made them lose them or not, but I think it was. By the Court: He is asking you about the cows now. Q. I mean the flesh and appearance and the health of the cows themselves, did you notice any change in their condition and their health? A. When a cow aborts a calf they never do extra well. Q. Were these five cows as valuable as before? (Objection by counsel for defendant.) A. No, sir. Q. What were they worth before they aborted the calves? A. I don't think they were worth half as much afterwards. Q. What would that be? A. Well, we thought our entire herd was worth $100 a head. Q. What is the difference in their value afterwards and before, that aborted their calves? A. I would judge they were worth $50 a head afterwards."

Regarding the value of two heifers that died as a result of drinking salt water, plaintiff testified as follows:

"Q. In May, 1932, what would you say was the value of that heifer? (Objection by counsel for defendant.) A. I think I gave about the worth of it. (Objection by counsel for defendant.) By the Court: Well, don't answer the question that way. He asked you the value of it. A. Well, I would say $65. Q. What was the Holstein heifer worth? A. $50."

Plaintiff claims further damages to his entire herd of cattle on account of their drinking salt water and their removal to another pasture. In connection with this element of damage, plaintiff testified as follows:

"Q. In addition to procuring other pasture and removing your cattle to it, I will ask you if you observed any difference in the condition of the 42 head of cattle which you were pasturing in that pasture along about that time? (Objection by counsel for defendant.) A. They didn't do well. Q. Be a little more specific in what you observed in the condition of the cattle as to their appearance, etc.? A. When cattle don't do well, their hair don't look good and they don't put on weight. Changing them from one pasture to another. Q. Are you able to tell the jury the difference in dollars between the value of those cattle caused by this change of pasture, or taking them off and by reason of having trouble with the water of the creek? (Objection by counsel for defendant.) A. I can give you my judgment. Q. That is what I am asking you for, per head? A. I would say $10 apiece. Q. And there was 42 head? A. Yes, sir."

With regard to these elements of damage no other testimony was offered.

"The measure of damages for the destruction of personal property is the reasonable market value of same at the time it was destroyed; but, if it has no market value, then its value, in view of the use to which it was to be put, may be recovered." Mitchell v. Wadsworth, 78 Okla. 125, 188 P. 1078; W. F. & N. W. R. Co. v. Gant, 56 Okla. 727, 156 P. 672.

The jury was instructed that plaintiff was entitled to recover the fair market value of the cows and calves that died at the time they died, and as to the cattle which were damaged and depreciated in value plaintiff was entitled to recover the difference in the fair market value thereof before the injury and immediately thereafter. It is noted, however, that there is no evidence in the record disclosing the fair market value of the cows and calves that died, and there is no evidence disclosing the fair market value of the cattle which were injured either prior to or subsequent to the time of the injury. The only evidence of value offered was the individual opinion of plaintiff not predicated upon the fair market value.

Defendant also contends that the trial court erred in the admission of evidence relating to the cost of constructing a dam. This evidence was admitted on the theory that defendant was responsible for the damage to plaintiff's water supply and was therefore responsible for the cost of the construction of the dam, since by its wrongful act defendant made it necessary for plaintiff to procure a new water supply. Regarding the cost of the dam, plaintiff testified as follows:

"Q. Do you know about what the cost of that dam was to you? (Objection by counsel for defendant.) A. Would have to just guess at it; I never kept an accurate account. (Objection by counsel for defend-

ant.) Q. Did you keep any account of it? A. Not an itemized account. Q. Tell us when you built it and the number of men employed and the length of time it took? A. Well, we used all the help we could get. Q. About how many? A. About ten for about three weeks. And later on we thought the dam was going out and we used 15 or 20 in the rain for about a coup'e of days. Then riprapped it up with rock, used about four men for two or three weeks. We used a tractor and four four-wheel scrappers and plows. Q. Have you a judgment as to the approximate cost of that dam? A. I always thought it cost me $1,000. (Objection by counsel for defendant.) Q. Well, do you have a judgment? A. Yes, I have a judgment. Q. What is your judgment of the approximate cost of that dam? (Objection by counsel for defendant.) A. $1,000."

The jury was instructed as follows:

"For whatever damage and injury plaintiff necessarily suffered from pollution of Euchee creek and the waters thereof by salt water or other deleterious substances in January and February, 1932, such cost and expenditures as were reasonably and necessarily required to be expended and were reasonably and necessarily expended for such purposes in building a dam and impounding suitable water for the stock used by him at said time, in this case, however, not exceeding $1,000."

The general rule is that where the law gives a remedy for a wrong done the compensation should be equal to the injuries sustained, and the latter is the standard by which the former is to be measured. The injured party is to be placed as near as may be in the situation which he would have occup'ed had not the wrong been done. Van Sickle v. Franklin, 62 Okla. 284, 162 P. 950; Sackett v. Rose, 55 Okla. 398, 154 P. 1177, L. R. A. 1916D, 820. The measure of damages for a tort is such amount as will compensate for all the detriment proximately caused thereby. Missouri, K. & T. Ry. Co. v. West, 38 Okla. 581, 134 P. 655; appeal dismissed, 232 U. S. 682, 34 S. Ct. 471, 58 L. Ed. 795.

The above rules measure the extent of defendant's liability to plaintiff. The instruction of the court on this item of damage is subject to criticism for the reason that the jury is allowed under such instruction to assess the entire cost of the construction of the dam as an element of damage against the defendant.

Plaintiff alleges that due to the pollution of the stream and on account of being forced to remove the cattle to another pasture, the milk production of his dairy herd was lessened. We have examined the evidence, and it is impossible to determine with any degree of accuracy the amount of such lessened production of milk or the amount of damage sustained thereby.

Other contentions are made and argued in the briefs, but are without substantial merit. For the foregoing reasons, the judgment of the trial court is reversed, and the cause remanded, with directions to grant a new trial.

RILEY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur.