DENCO BUS LINES, Inc., et al.
v. HARGIS.

No. 33800.   Jan. 23, 1951.

Rehearing Denied April 3, 1951.

*229 P. 2d 560.*

Draper Grigsby and James D. Foliart, Oklahoma City, for plaintiff in error Denco Bus Lines, Inc., and Highway Insurance Underwriters.

Welcome D. Pierson and Howard Hentz, Oklahoma City, for plaintiff in error Otis S. James and Pennsylvania Casualty Company.

Cantrell, Carey & McCloud, Oklahoma City, and Arrington & Miller, of Shawnee, for defendant in error.

WELCH, J. Phena Hargis in action in damages for personal injuries received verdict of jury and judgment thereon against Denco Bus Lines, Inc., a corporation, Otis S. James, doing

business as Norman-Shawnee Bus Lines, Highway Insurance Underwriters, a corporation, and Pennsylvania Casualty Company, a corporation, in the amount of $17,500.

The plaintiff sustained injuries as a result of a bus collision involving a bus owned by the defendant James. The defendants insurance companies were respectively public liability insurance contractors under hire of the bus owners. The defendants Denco and its insurance carrier, Highway Insurance Underwriters, and, the defendants James and his insurance carrier, Pennsylvania Casualty Company, separately, appeal from the verdict and judgment in favor of the plaintiff.

No question is raised by the defendants as to the sufficiency of the evidence to show negligence on the part of both defendant motor carriers resulting in injury to plaintiff, and of the liability of the defendants for such injuries.

It is asserted by defendants that the verdict of the jury in the amount of $17,500 is not supported by the evidence, is excessive, and appears to have been given under the influence of passion and prejudice.

The bus collision occurred near Shawnee. The plaintiff, a bus passenger, testified that at the time of the accident she was thrown from a seat on the bus and was rendered unconscious for 20 or 30 minutes; that on return to consciousness she was suffering pain in her chest, back, both knees and both feet. Her testimony shows she was given first aid treatment in a hospital in Shawnee and was then removed to the home of a friend in that city, and was there confined to bed for two or three days, and was then removed to her home in Ada. A physician was called to her home and administered a hypodermic shot to her and the next day she was admitted to a hospital in Ada. She remained in the hospital five days and returned to her home, and accord-

ing to testimony, remained in bed several weeks before returning to active employment.

The testimony reflects that plaintiff at the time of the accident was 39 years of age and in good health and had a life expectancy of 27 years. She was employed in a supervisory position with a telephone company. She was out of such work for approximately six weeks after the accident. Thereafter, following periods of active employment for the company, plaintiff was off work for a six weeks period and a period of 39 weeks.

At the trial of the case the plaintiff testified she was suffering from pain in the neck and back and headache and nervousness, and that such condition had prevailed and continued since the bus collision three years before; that such condition was heightened during active employment and was the cause of the lay-offs mentioned above; that the wages lost in lay-off amounted to $2,224 and that medical bills resulting from her injuries amounted to $312.50.

A physician who examined the plaintiff a few days after the bus collision and at the Ada hospital testified that plaintiff at the time had bruises and abrasions about her body and a badly sprained back, and from history and observation appeared to be suffering from a brain concussion; that simple medication for the bruises and abrasions and rest was prescribed and practiced; that she left the hospital after five days and thereafter over a period of 18 months he saw plaintiff on several occasions and administered light and heat treatments to her neck and back; that on such occasions she was nervous and had pain in her neck and back, and that such pain was found and demonstrable without reliance on her statements; that plaintiff's engagement in active employment after the accident was against his advice. The witness testified that he had known and treated the plaintiff prior to the time

of the collision and that at the time of the collision plaintiff was in sound health and not afflicted with nervousness and bodily pain as found thereafter; that he had examined the plaintiff during the week preceding the trial of the case and had found the condition of nervousness and pain as in prior examinations. The witness expressed opinion that plaintiff's condition of recurring pain and nervousness was caused from injuries received in the bus collision, and that such condition was permanent.

Another physician called by the plaintiff testified concerning an examination of plaintiff at a time about ten months after the bus accident and at two other times within two years thereafter. The last examination being shortly before the trial date of this case. The witness stated that at each time of examination the plaintiff was suffering pain and nervousness observable and demonstrable without reliance on the statements of the plaintiff as to her condition. The witness expressed an opinion that the injuries sustained in the bus accident produced plaintiff's condition, and that plaintiff would never completely recover from all the effects of the injuries.

The measure of damages for a tort is such amount as will compensate for all the detriment proximately caused thereby 23 O. S. 1941 §61; Deep Rock Oil Corp. v. Griffeth, 177 Okla. 208, 58 P. 2d 323.

The recovery may include compensation for any pecuniary loss sustained by reason of the injury such as loss of work time and consequent loss of earnings and the expense incurred in necessary medical attention. Also, the plaintiff is entitled to compensation for physical pain and suffering directly resulting from the wrongful acts of the defendant, and future pain and suffering on the part of the injured person in consequence of the injury constitute a proper element of the damages which may be allowed. 15 Am. Jur., Damages, §§71, 72, and 73.

In a proper consideration of these elements, as said in Public Service Co. of Oklahoma v. Hawkins, 194 Okla. 272, 149 P. 2d 783:

" . . . We have no right to place limitations upon the amount returned by the jury unless we are convinced that the amount of recovery bears no relation whatever to the evidence or that it was induced by bias or prejudice on the part of the jury."

In Bucktrot v. Partridge, 130 Okla. 122, 265 P. 768, it is said in the syllabus:

"In a suit for damages for personal injuries, before a verdict of the jury will be set aside as excessive, it must appear that the verdict is so excessive as to strike mankind, at first blush, as being beyond all measure unreasonable and outrageous and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice, or corruption."

In the Bucktrot case reference is made to Coleman v. Southwick, 9 Johns (N.Y.) 45, 6 Am. Dec. 253, and an expression of Chancellor Kent therein as follows:

"The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess."

Herein, according to the testimony of the plaintiff and her witnesses, she sustained personal injuries which have caused physical pain and suffering for a period of three years and such injuries are permanent and will cause future physical pain and suffering or, at the least, will interfere with gainful employment, and such injuries have already resulted in an incurring of medical bills and a loss in wages in a total sum of $2,536.50.

342

There can be no doubt that pain and suffering might interfere with gainful employment and in such circumstances a pecuniary loss might be computed, but there is no fixed rule or standard whereby damages for pain and suffering alone can be measured. In St. Louis, S. W. R. Co. v. Kendall, 114 Ark. 224, 169 S. W. 822, we note this expression:

"There is no 'market where pain and suffering are bought and sold, nor any standard by which compensation for it can be definitely ascertained, or the amount actually endured determined.' "

In Butts v. Ward, 227 Wis. 387, 279 N. W. 6, 116 A. L. R. 1441, said the court:

"Compensation for pain and suffering is hard to measure, and must rest in the discretion of the jury, guided by common sense."

Herein, neither of the parties have seen fit to cite us to cases in which assessment of damages for pain and suffering only have been passed upon, or wherein pain and suffering was the major factor, and we do not perceive that a full discussion of the various fact situations in such cases is here required, nor do we deem it necessary to here enter into discussion of the cases cited by the parties reflecting instances of approval or disapproval of verdicts challenged as excessive. The rules applied in all such cases appear generally in accord and are well settled and in accord with the rules stated above.

In cases of the character here involved the damages allowed must be limited to those shown by the evidence. But the jury may consider testimony of the plaintiff and her expert witnesses that she suffered a particular injury and the effects thereof, although there is evidence in the case to the contrary. It is not our province to substitute our judgment for that of the jury in the exercise of its function as a fact-finding body, and we must con-

sider the testimony most favorable to the plaintiff as establishing the facts bearing upon the question of whether or not the amount of the verdict was excessive. We have described plaintiff's injuries and resulting condition as shown in the testimony most favorable to her claim for damages. Considering her injuries and her pain and suffering therefrom for three years, and that such injuries are permanent, and considering her age and her expectancy of 27 years, and her loss of wages and the medical bills incurred, we cannot say that an allowance of $17,500 is so flagrantly outrageous and extravagant as to point to passion, partiality, prejudice or corruption on the part of the jury who assessed the damages. Under the circumstances we find no error in the judgment of the trial court approving the verdict.

The defendants assert the trial court erred "in giving to the jury instruction No. 19 on the measure of damages."

In the instruction the jury is advised that it may take into consideration any future pain and suffering as may be established by the evidence. The defendants' assertions of error rest on a predicate that there was no evidence of permanent injury or that plaintiff would endure future pain and suffering. The assertions of error are without merit for reasons hereinbefore mentioned, that a medical witness testified that plaintiff's injuries are permanent and such as cause pain and nervousness.

The defendants James and Pennsylvania Casualty Company contend the trial court erred in refusing an offer of proof that plaintiff received sick benefits from her employer during the time she was disabled as a result of injuries sustained in the bus accident.

In statute it is provided:

"For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all detriment proxi-

mately caused thereby, . . ." 23 O. S. 1941 §61.

In 15 Am. Jur. Damages, §198, we note this statement:

"As a general rule, total or partial compensation for an injury received by the injured party from a collateral source wholly independent of the wrongdoer will not operate to lessen the damages recoverable from the person causing the injury."

In the same text, §201, it is stated:

"It is well settled that damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partly idemnified for his loss by insurance effected by him and to the procurement of which the wrongdoer did not contribute. . . . The same has been held true of compensation received by an employee from a benefit fund maintained by the employer."

Under our statute upon commission of a tort it is the duty of the wrongdoer to answer for the damages wrought by his wrongful act, and that is measured by the whole loss so caused. Under the statute the receipt of compensation by the injured party from a collateral source wholly independent of the wrongdoer would not operate to lessen the damages recoverable from the person causing the injury.

We hold the objection to the offer of proof was properly sustained.

The defendants James and Pennsylvania Casualty Company contend the trial court erred in permitting the joinder of the insurance carrier with the motor carrier as a party defendant.

The contention has been presented in numerous cases before this court. In All American Bus Line v. Saxon, 197 Okla. 395, 172 P. 2d 424, it was the first proposition urged for reversal, and argument presented thereunder was in similar vein as here presented. In the Saxon case, said the court:

"This court, in Temple v. Dugger, 164 Okla. 84, 21 P. 2d 482; Jacobsen

v. Howard, 164 Okla. 88, 23 P. 2d 185; Enders v. Longmire, 179 Okla. 633, 67 P. 2d 12; Safeway Cab Co. v. McConnell, 181 Okla. 613, 75 P. 2d 884; Graves v. Harrington, 177 Okla. 448, 60 P. 2d 622; Be-Mac Transport Co. v. Lairmore, 191 Okla. 249, 129 P. 2d 192; and American Fidelity & Casualty Co. v. Bennett, 182 Okla. 71, 76 P. 2d 245, determined the first proposition adversely to appellants and now adheres to the determination."

In the Saxon case, in paragraph one of the syllabus, it is said:

"Under the provisions of 47 O. S. 1941 §169, a motor carrier and his liability insurance bondsmen are jointly liable to make compensation for injuries to persons, resulting from the operation of such motor carrier, the liability being created by statute, and such an injury constitutes one cause of action against the joint defendants, and not a separate cause of action against each of them."

The judgment of the trial court is affirmed and with such affirmance it is ordered, adjudged and decreed that the plaintiff, Phena Hargis, have and recover the sum of $17,500 together with interest and costs as provided under the terms of the supersedeas bond filed herein and from the principals and surety therein named.

CORN, GIBSON, DAVISON, and JOHNSON, JJ., concur. HALLEY and O'NEAL, JJ., concur in affirmance, but dissent as to the amount of verdict.