Thomas Mac **WEATHERLY**, as Personal Representative of the Estate of Clara Bell Weatherly, Appellee,

v.

Lovada **FLOURNOY** a/k/a Lovada K. Birch, an individual, Appellant.

No. 85495.

Court of Appeals of Oklahoma, Division No. 1.

Sept. 10, 1996.

Certiorari Denied Nov. 5, 1996.

John A. Gladd, William F. Smith, Gail W. Harris, J. Derek Hardberger, Gladd, Smith & Harris, P.A., Tulsa, for Appellant.

Richard A. Shallcross, Brewster Shallcross & De Angelis, Tulsa, for Appellee.

## OPINION

BUETTNER, Judge:

Appellee Thomas Mac Weatherly sued Appellant Lovada Flournoy in negligence for the wrongful death of his wife. After trial, the jury rendered a verdict against Lovada Flournoy and in favor of Thomas Mac Weatherly, personal representative of his deceased spouse's estate, in the amount of $203,000.00. The trial court entered judgment on the verdict. After trial, Flournoy filed motions to stay execution and to settle journal entry, both grounded on her position that the judgment should be reduced, or set-off, by $200,000.00, the amount Weatherly had received from his own insurance company under his uninsured/underinsured motorist coverage. The trial court denied the motion to stay because Flournoy failed to post the bond required to stay execution of the judgment. The trial court also denied Flournoy's request for a $200,000.00 credit against the judgment.

Appellant Flournoy contends that the trial court erred because (1) the collateral source rule does not apply to uninsured/underinsured motorist coverage; (2) Weatherly was not the real party in interest; and (3) it awarded double compensation for the same tort. We disagree with Flournoy's contentions and affirm the judgment and order of the trial court.

### STANDARD OF REVIEW

■ The three propositions of error are questions of law. We review them *de novo*, without deference to the trial court's legal rulings. *Kluver v. Weatherford Hospital Authority,* 859 P.2d 1081, 1084 (Okla.1993).

### COLLATERAL SOURCE RULE

■ In *Denco Bus Lines v. Hargis,* 204 Okla. 339, 229 P.2d 560 (1951), Hargis sued the bus company for injuries she sustained when the bus in which she was riding collided with another bus. While she was recuperating from her injuries, her employer paid her medical benefits. She sued the bus company and was awarded damages. The bus company sought a set-off of the amount of the employer paid medical benefits, stating that 23 O.S. 1941 § 61 defined the measure of damages for a tort as such amount as will compensate for all the detriment proximately caused thereby. In its syllabus, the *Denco Bus Lines* court held:

> Upon commission of a tort it is the duty of the wrongdoer to answer for the damages wrought by his wrongful act, and that is measured by the whole loss so caused and the receipt of compensation by the injured party from a collateral source wholly independent of the wrongdoer does not operate to lessen the damages recoverable from the person causing the injury.

*Id.* 229 P.2d at 561. When an injured person receives payment for injuries from a source not connected with the tortfeasor, the tortfeasor is still liable for the full statutory amount, whatever that is determined to be. Payment to the injured party by an independent source does not operate to reduce or mitigate the amount for which the tortfeasor is liable. This is the collateral source rule.

■ Unless the damage payment is made by the tortfeasor or someone on his behalf, such payments are from a collateral source and cannot "inure to the benefit of defendant, nor lessen the damage recoverable from him and evidence of the reimbursement is inadmissible." *Porter v. Manes,* 347 P.2d 210, 212 (Okla.1959).

In *Chambers v. Walker,* 653 P.2d 931 (Okla.1982), the uninsured motorist carrier, relying on a clause in its contract which allowed a set-off against any workers' compensation benefits its insured received, sought reduction in the amount of its coverage. The *Chambers* court recognized the unfairness of permitting an insurer to deny to an insured the benefit of a certain type of coverage for which the insured had paid premiums. Citing 36 O.S.Supp.1979 § 3636(E), the *Chambers* court stated that since "the intention of the legislature is so clear that payments made by a tort-feasor should not

diminish the injured party's recovery under his own policy, it is even more likely that the set-off of benefits recovered from a collateral source would be prohibited."[1] *Id.* at 935. The *Chambers* court found that the contract clause reducing the amount of uninsured motorist payments by the amount paid by workers' compensation void as violative of legislation in favor of uninsured motorist coverage and because such a set-off could render the uninsured motorist coverage lower than the amount required by statute.

Oklahoma has applied the collateral source rule when medical benefits were paid by an employer who was found to be liable for the employee's injuries. In *Handy v. City of Lawton*, 835 P.2d 870 (Okla.1992), an off-duty police officer accidently shot and wounded a fellow off-duty officer. Judgment was awarded against City of Lawton for damages and it wanted to off-set the amount by the employer-sponsored medical insurance benefits paid to the wounded officer. The court found that set-off was not proper because if the "fund is for general hospital and medical coverage upon which the insured may make a claim without regard to liability on the part of the employer, the policy is a fringe benefit, and is part of the employee's income. The collateral source rule prohibits a set-off of benefits received thereunder by the employee."[2] *Id.* at 874.

Oklahoma also recognizes that subrogation rights of the insurer are not relevant to the tortfeasor. In *Dippel v. Hunt*, 517 P.2d 444, 448 (Okla.App.1973), the court stated that "when the smoke of controversy clears away much can be said for the notion that it is really none of the tortfeasor's concern what rights might exist between the tortfeasor's victim and the latter's own insurance carrier, save to avoid subjection to more than one judgment—an event not possible under existing decisional law."

■ Based on the development of the collateral source rule in Oklahoma, and having reviewed the law of other jurisdictions, we find that a tortfeasor may not set-off any amount he is found to owe the injured party by any amount the injured party may have received from his own uninsured/underinsured motorist policy.[3] The tortfeasor should not benefit from a policy held and paid for by the injured party.

## *REAL PARTY IN INTEREST*

■ For her second allegation of error, Flournoy contends that Weatherly is not the real party in interest because his interest was subrogated to the uninsured/underinsured motorist insurance carrier. The record reveals, however, that the parties stipulated that the insurance carrier, who paid Weatherly the limits of its policy, $200,-

1. 36 O.S.1991 § 3636(E), in pertinent part states, in language identical to that found in the 1979 version: Provided further, that any payment made by the insured tortfeasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage.

2. Oklahoma recognizes, however, that between the insurer and insured, as to medical payments, the parties "may contract to exclude coverage or reimbursement of medical expenses incurred as a result of an injury arising out of or in the course of employment or as the result of a disease which is covered by the Workers' Compensation Act to the extent the Workers' Compensation Act reimbursed plaintiff for his medical expenses." *Starrett v. Oklahoma Farmers Union Mutual Ins. Co.*, 849 P.2d 397, 399 (Okla.1993).

3. **Accord:** *Beaird v. Brown*, 58 Ill.App.3d 18, 15 Ill.Dec. 583, 585–86, 373 N.E.2d 1055, 1057–58 (1978) (no set-off against judgment because pay-

ments received pursuant to plaintiff's uninsured motorist coverage were received from a collateral source. Whether insurer waived right of subrogation is not a concern so long as defendant is protected from second recovery by plaintiff's insurer). *Southard v. Lira*, 212 Kan. 763, 512 P.2d 409, 414 (1973) (collateral source rule properly applied because damages for a wrong cannot be diminished by the fact that the injured party indemnified partly or in whole by insurance he procured and to which the tortfeasor did not contribute; collateral source rule not affected by whether insurer releases or exercises right of subrogation). **Contra:** *Batchelor v. Brye*, 421 So.2d 1267, 1269 (Ala.Civ.App.1982) (goal of uninsured motorist coverage is to make plaintiff whole, not allow double recovery). *Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 331 (Minn. 1990) (common law collateral source rule abrogated by Minn.Stat. § 548.36, allowing for off-set against judgment if plaintiff recovered payments for injuries from certain nonexempt collateral sources; exempt sources include life insurance; social security benefits or pension payments).

000.00, waived its statutory right of subrogation. 36 O.S. 1991 § 3636(E). Oklahoma does not allow assignment of torts. *Dippel v. Hunt,* 517 P.2d 444, 447 (Okla.App.1973). The injured party is the real party in interest.

■ Even under Flournoy's argument, upon settlement or judgment, the UM carrier would have been entitled to recover its $200,000.00 payment from its insured pursuant to 36 O.S.1991 § 3636(E). In accordance with *Harrington v. Central States Fire Ins. Co.,* 169 Okla. 255, 36 P.2d 738, 740 (1934), the case against the tortfeasor may be prosecuted in the name of the insured when both the insured and his subrogated insurer may share in the recovery. The insured becomes the trustee of the insurer's interest.[4] It is only when the insurer pays the insured's entire loss, which is not the case here, that the insurer becomes the real party in interest.

It makes little difference to the tortfeasor who receives the judgment. Nor does it concern the tortfeasor that the insurer transfers its subrogation interest after the judgment is rendered, or before judgment by way of waiver or assignment.

As Flournoy points out, "[s]ubrogation is a doctrine the law has devised for the benefit of one secondarily liable who has paid the debt of another." *Sexton v. Continental Casualty Co.,* 816 P.2d 1135, 1138 (Okla.1991). There is no authority cited for the argument that the doctrine of subrogation was created to prevent a windfall to an insured by being paid twice for the same loss, if that result was agreed upon by the insured and his insurer. Nor is there authority cited that the doctrine of subrogation was intended to benefit the tortfeasor by reducing his liability for damages.

■ Flournoy relies upon certain stipulations of the parties and two letters signed by the insurer's counsel. These evidentiary items are insufficient, standing alone, to show a contract between the insurer and tortfeasor intending to benefit the tortfeasor. We do not address the situation in which the UM carrier attempts to settle its claim directly with the tortfeasor. Here, there is simply a waiver of the UM carrier's subrogation interest. Under existing law, the insured, rather than the tortfeasor, receives the benefit of that waiver.

### NO DOUBLE COMPENSATION

■ Weatherly collected $200,000.00 pursuant to his deceased wife's uninsured/underinsured motorist coverage. The premiums paid for this coverage were the consideration for the right to collect on the policy if she were injured by an uninsured or underinsured tortfeasor.

■ After trial, Flournoy was determined to be a tortfeasor and damages caused by Flournoy were set at $203,000.00. The measure of damages, for which a tortfeasor may be liable, "is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not." 23 O.S.1991 § 61. A tortfeasor owes for damages properly determined and may not profit from his injured party's insurance contract. Our law requires motor insurance companies to offer their insureds the opportunity to buy uninsured/underinsured motorist coverage. 36 O.S.1991 § 3636(A). It is insurance bought for the benefit of the buyer, not for the benefit of an uninsured or underinsured tortfeasor. There is no "double recovery" when an injured person recoups payments pursuant to the contract with his insurance company and is also awarded a judgment for damages from the tortfeasor.

For these reasons, we affirm the judgment of the trial court.

AFFIRMED.

HANSEN, P.J., and JOPLIN, J., concur.

---

4. Cf. *Roberts v. Mid–Continent Casualty Co.,* 790 P.2d 1121, 1124 (Okla.App.1989).