2015 OK 13

**Carolyn MARIANI, Plaintiff/Appellee,**

**v.**

**The STATE of Oklahoma ex rel. OKLA-HOMA STATE UNIVERSITY, Defendant/Appellant.**

**No. 112,796.**

Supreme Court of Oklahoma.

March 24, 2015.

Anthony F. Gorospe, Gorospe & Smith, P.L.L.C., Tulsa, Oklahoma, for Plaintiff/Appellee.

Devan A. Pederson, Assistant Attorney General, Oklahoma City, Oklahoma, for Defendant/Appellant.

COMBS, V.C.J.:

¶1 The question presented to this Court is whether certain provisions of The Governmental Tort Claims Act (GTCA), specifically 51 O.S.2011 §§ 158(E) & 162(D), permit the State of Oklahoma or a political subdivision to set off from liability amounts previously paid to a GTCA tort claimant from the claimant's own insurer, thereby abrogating the collateral source rule for claims arising under the GTCA with respect to these insurance benefits. We answer the question in the negative.

**FACTS AND PROCEDURAL HISTORY**

¶2 Plaintiff/Appellee Carolyn Mariani (Mariani) was injured in a motor vehicle accident on July 25, 2011, in Payne County, Oklahoma, when her vehicle was struck by a tractor-trailer operated by an employee of Defendant/Appellant State of Oklahoma ex rel. Oklahoma State University (State). Mariani filed suit on May 3, 2012, under The Governmental Tort Claims Act (GTCA), 51 O.S. § 151 *et seq.* In her Petition, Mariani alleged that she was injured by the driver's negligence, that the driver was an employee of the State of Oklahoma, and that the employee was acting within the scope of his employment when the negligent acts occurred.

¶3 Mariani admitted that her insurer, AAA, had compensated her in the amount of $100,000 in underinsured/uninsured (UM) motorist benefits and $25,000 in medical payment coverage.[1] On February 13, 2013, the State moved for an interlocutory order ruling it had the right to set off Mariani's insurance receipts from its total liability pursuant to 51 O.S.2011 §§ 158(E) & 162(D). Mariani objected, and on April 9, 2013, the trial court issued an interlocutory order denying the State's motion for the right to a setoff. The trial court certified its order for immediate review and the State filed a Petition for Certiorari Certified Interlocutory Order on April 15, 2013. This Court denied the State's petition to review the certified interlocutory order on May 20, 2013.[2]

¶4 Prior to trial, the parties stipulated that the driver was acting within the scope of his employment at the time of the accident. The parties further stipulated that the State has no liability insurance or other applicable insurance coverage that would pay costs, judgments, or settlements arising from the accident, and also stipulated that the State was liable for any injuries to Mariani which she could prove were proximately caused by the accident subject to the limitations of the GTCA and the defenses raised by the State in the pretrial conference order. The parties additionally stipulated to the $125,000 Mariani received in UM and Medical Payment benefits from AAA.

¶5 This cause proceeded to a non-jury trial, which occurred on April 2, 2014. At trial, Mariani alleged she had incurred medical expenses in the amount of $136,779.74 for injuries to her neck, back, and left shoulder. The State once again asserted it was entitled to a setoff of Mariani's insurance benefits

---

1. AAA waived any potential right to subrogation.

2. Case No. 111,672.

pursuant to the GTCA.[3] The State renewed its motion for a setoff at the conclusion of evidence, and the trial court directed the parties to address the issue in closing arguments. The trial court denied the State's renewed motion for a setoff from the bench and noted the denial in its Journal Entry of Judgment filed on April 10, 2014. The trial court found in favor of Mariani in the amount of $175,000 and entered judgment against the State.

¶ 6 The State filed its Petition in Error on April 30, 2014, raising as its only issue on appeal the question of whether it is entitled to a setoff of Mariani's insurance benefits against its own liability pursuant to 51 O.S. 2011 §§ 158(E) & 162(D). The State also filed a motion to retain this cause on April 30, 2014, which this Court granted on June 19, 2014. The cause was assigned to this office on January 22, 2015.

## I.

## STANDARD OF REVIEW

¶ 7 The issue in this cause hinges on the meaning and application of 51 O.S. 2011 §§ 158(E) & 162(D). A question of statutory interpretation is a question of law. *Hubbard v. Kaiser–Francis Oil Co.,* 2011 OK 50, ¶ 6, 256 P.3d 69; *Fulsom v. Fulsom,* 2003 OK 96 ¶ 2, 81 P.3d 652; *Samman v. Multiple Injury Trust Fund,* 2001 OK 71, ¶ 8, 33 P.3d 302. Accordingly, our standard of review is *de novo* as this Court possesses plenary, independent, and non-deferential authority to examine the trial court's legal rulings. *Fulsom,* 2003 OK 96, ¶ 2, 81 P.3d 652; *Samman,* 2001 OK 71, ¶ 8, 33 P.3d 302.

## II.

## THE COLLATERAL SOURCE RULE HAS LONG BEEN PART OF THE LAW OF TORTS IN OKLAHOMA

¶ 8 The State asserts on appeal that specific provisions of the GTCA, 51 O.S.2011

---

3. While other issues concerning the nature and extent of Mariani's injuries were litigated at trial, they are not the subject of this appeal.

4. Title 23 O.S.2011 § 61 provides:

§§ 158(E) & 162(D), permit it to set off the amount Mariani received in UM and Medical Payment benefits from AAA against the State's total liability. In general, Oklahoma adheres to what is commonly referred to as the collateral source rule: compensation given to the injured party from a collateral source wholly independent of the wrongdoer does not operate to lessen the damages recoverable from the person who causes the injury. *Blythe v. University of Oklahoma,* 2003 OK 115, ¶ 7, 82 P.3d 1021; *Denco Bus Lines, Inc. v. Hargis,* 1951 OK 11, ¶ 22–26, 204 Okla. 339, 229 P.2d 560 (citing 23 O.S. 1941 § 61 and 15 Am.Jur. Damages 198 & 201). *See* 23 O.S.2011 § 61.[4]

¶ 9 In *Denco Bus Lines, Inc.,* this Court upheld a trial court's denial of an offer of proof from the defendant bus operator that a plaintiff involved in a bus accident received sick benefits from her employer during the time she was disabled as a result of injuries sustained in the bus accident. This Court noted:

"It is well settled that damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partly indemnified for his loss by insurance effected by him and to the procurement of which the wrongdoer did not contribute.... The same has been held true of compensation received by an employee from a benefit fund maintained by the employer."

1951 OK 11, ¶ 25, 229 P.2d 560 (quoting 15 Am.Jur. Damages § 201).

¶ 10 In *Blythe,* this Court applied the collateral source rule in a workers' compensation proceeding pursuant to a different statutory incarnation of the rule, 85 O.S. § 45(A) of the Workers' Compensation Act (Repealed by Laws 2011, SB 878, c. 318, § 87). 2003 OK 115, ¶¶ 7–8, 82 P.3d 1021. Examining both incarnations of the rule, this Court stated:

For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not.

[u]nder both the collateral source rule and under the terms of the Workers' Compensation statutory provision, compensation is determined without any reduction for the amount of any benefits the injured party received from his or her health insurance carrier. Stated another way, under both the collateral source rule and statutory scheme, no credit or set-off is given to the liable party for the amounts previously paid by the injured party's health insurance carrier.

*Blythe*, 2003 OK 115, ¶ 8, 82 P.3d 1021.

¶ 11 In *Weatherly v. Flournoy*, 1996 OK CIV APP 109, ¶¶ 4–9, 929 P.2d 296 (cert. denied Nov. 5, 1996), the Court of Civil Appeals applied the collateral source rule, based on this Court's previous analysis, to a nongovernmental tortfeasor's attempt to obtain a setoff for the amount an injured party recovered from its UM motorist policy. The court in *Weatherly* concluded:

> [b]ased on the development of the collateral source rule in Oklahoma, and having reviewed the law of other jurisdictions, we find that a tortfeasor may not set-off any amount he is found to owe the injured party by any amount the injured party may have received from his own uninsured/underinsured motorist policy. The tortfeasor should not benefit from a policy held and paid for by the injured party.

1996 OK CIV APP 109, ¶ 9, 929 P.2d 296 (footnotes omitted).

■ ¶ 12 The *Weatherly* court was correct in its assessment of the evolution of the collateral source rule in Oklahoma. The general rule is that a tortfeasor is not permitted to set off an amount owed to an injured party by any amount that injured party may have received from the party's own UM policy, a collateral source of benefits. The question presented on appeal, however, is whether this general rule is abrogated for claims against **governmental tortfeasors** under the GTCA by 51 O.S.2011 §§ 158(E) & 162(D).

### III.

**TITLE 51 O.S.2011 §§ 158(E) and 162(D) DO NOT ABROGATE THE COLLATORAL SOURCE RULE FOR CLAIMS ARISING UNDER THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT, 51 O.S. § 151 *et seq.***

■ ¶ 13 The State argues that abrogation of the collateral source rule with regard to insurance benefits received by the claimant in GTCA claims against the State or a political subdivision was the intention of the Legislature when enacting 51 O.S.2011 §§ 158(E) & 162(D). The State asserts these provisions exempt it from liability for the amount a claimant receives from any applicable contract or policy of insurance, which it asserts in this cause consist of Mariani's UM and Medical benefits paid out by her insurance carrier, AAA—benefits paid to her as a result of her desire to insure herself. Mariani, in contrast, argues that the State misinterprets these provisions and that the provisions instead operate to exempt the State or a political subdivision from liability for amounts paid out by an applicable contract or policy of insurance **on the State or political subdivision's own behalf.**

**A. The Governmental Tort Claims Act, 51 O.S. 151 *et seq.*, does not abridge or enlarge private tort law unless otherwise statutorily laid down.**

¶ 14 This Court abrogated the judicially recognized doctrine of governmental immunity in *Vanderpool v. State*, 1983 OK 82, ¶ 21–26, 672 P.2d 1153. In response to *Vanderpool*, the Legislature adopted and then conditionally waived sovereign immunity through the Governmental Tort Claims Act, 51 O.S. § 151 *et seq.*[5] The GTCA generally extends

---

5. Specifically, 51 O.S.2011 § 152.1 provides:

A. The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.

B. The state, only to the extent and in the manner provided in this act, waives its immunity and that of its political subdivisions. In so waiving immunity, it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution.

governmental accountability to all torts for which a private person or entity would be liable, subject only to the GTCA's specific limitations and exceptions. *McCathern v. City of Oklahoma City*, 2004 OK 61, ¶ 15, 95 P.3d 1090. *See* 51 O.S.2011 § 153.[6] Title 51 O.S. § 155, meanwhile, exempts the State from liability in numerous circumstances where a non-governmental tortfeasor might be liable. This Court summarized in *McCathern:*

> [t]he central principle embodied by the GTCA is that private tort law is neither abridged nor enlarged by that act. Rather, it is made applicable to governmental entities by the state's waiver of sovereign immunity, *unless of course otherwise statutorily laid down.*

2004 OK 61, ¶ 17, 95 P.3d 1090 (footnotes omitted).

The collateral source rule therefore applies equally to GTCA claimants as it does to non-GTCA claimants unless the provisions of the GTCA provide otherwise.

### B. The interpretation of 51 O.S.2011 §§ 158(E) & 162(D) poses a question of statutory construction.

¶ 15 Determining the meaning of 51 O.S.2011 §§ 158(E) & 162(D) in the context of this cause presents a question of statutory construction, the primary goal of which is to ascertain and follow the intent of the Legislature. *Stump v. Cheek*, 2007 OK 97, ¶ 9, 179 P.3d 606; *Cooper v. State ex rel. Dept. of Public Safety*, 1996 OK 49, ¶ 10, 917 P.2d 466; *TRW/Reda Pump v. Brewington*, 1992 OK 31, ¶ 5, 829 P.2d 15. Legislative intent is first sought in the language of the statute.

---

**6.** Title 51 O.S.2011 § 153, in effect for purposes of this cause, provided:

A. The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in The Governmental Tort Claims Act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of The Governmental Tort Claims Act for any act or omission of an employee acting outside the scope of the employee's employment.

*YDF, Inc. v. Schlumar, Inc.*, 2006 OK 32, ¶ 6, 136 P.3d 656; *World Publishing Co. v. Miller*, 2001 OK 49, ¶ 79, 32 P.3d 829. When statutory language is unambiguous, no further construction is needed, and the unambiguous language will be applied as written. *St. John Medical Center v. Bilby*, 2007 OK 37, ¶ 6, 160 P.3d 978; *Winston v. Stewart & Elder, P.C.*, 2002 OK 68, ¶ 12, 55 P.3d 1063.

### C. The unambiguous language of 51 O.S. 2011 §§ 158 & 162 indicates it was not the intent of the Legislature to abrogate the collateral source rule with respect to GTCA claims.

¶ 16 A careful reading of the two provisions in question indicates that their language is not ambiguous and it was not the intent of the Legislature to abrogate the collateral source rule with respect to GTCA claimants against the State or a political subdivision. A thorough examination of 51 O.S. 2011 §§ 158 & 162 is in order.

¶ 17 In its entirety, Section 158 provides:

A. The state or a political subdivision, after conferring with authorized legal counsel, may settle or defend against a claim or suit brought against it or its employee under The Governmental Tort Claims Act subject to any procedural requirements imposed by statute, ordinance, resolution or written policy, and may appropriate money for the payment of amounts agreed upon. When the amount of any settlement exceeds Twenty-five Thousand Dollars ($25,000.00), and any payment required by the settlement will not be paid through an **applicable contract or policy of insurance,** the settle-

B. The liability of the state or political subdivision under The Governmental Tort Claims Act shall be exclusive and shall constitute the extent of tort liability of the state, a political subdivision or employee arising from common law, statute, the Oklahoma Constitution, or otherwise. If a court of competent jurisdiction finds tort liability on the part of the state or a political subdivision of the state based on a provision of the Oklahoma Constitution or state law other than The Governmental Tort Claims Act, the limits of liability provided for in The Governmental Tort Claims Act shall apply.

ment shall not be effective until approved by the district court and entered as a judgment as provided by law.

B. Any settlement payout pursuant to this section may be structured in any manner as agreed to by the parties involved; provided, if the state is a party to the settlement, and the settlement provides for a structured settlement, the state may participate in the structured settlement if the state payments to the claimant or the insurance or annuity company that is the assignee of the claimant are completed within the fiscal year in which settlement is agreed to and if the parties sign a Qualified Assignment and Release Agreement that releases the state from further obligation.

C. If a **policy or contract of liability insurance** covering the state or political subdivision or its employees is applicable, the terms of the policy govern the rights and obligations of the state or political subdivision and the insurer with respect to the investigation, settlement, payment and defense of claims or suits against the state or political subdivision or its employees covered by the policy. However, the insurer may not enter into a settlement for an amount which exceeds the insurance coverage without the approval of the governing body of the state or political subdivision or its designated representative if the state or political subdivision is insured.

D. Nothing in this section shall be construed to repeal or modify Sections 361 through 365.6 and 435 of Title 62 of the Oklahoma Statutes and it is intended that this section be construed in conformance with those sections.

E. The state or a political subdivision shall not be liable for any costs, judgments or settlements paid through an **applicable contract or policy of insurance** but shall be entitled to set off those payments against liability arising from the same occurrence.

F. The state or a political subdivision shall have the right of subrogation against the insurer issuing any **applicable contractor policy of insurance** to the monetary limit of said policy of insurance or

contract, if judgment or settlement of any claim arising pursuant to this act results in the imposition of monetary liability upon the state or the political subdivision.

G. Judgments, orders, and settlements of claims shall be open public records unless sealed by the court for good cause shown. 51 O.S. 2011 § 158 (emphasis added).

The phrase "applicable contract or policy of insurance" is first found in 51 O.S.2011 § 158(A), which provides that a State or political subdivision may settle or defend against a claim or suit brought against it or its employees subject to any procedural requirements imposed upon it by law. The section further provides when the settlement amount exceeds $25,000, and any payment required by the settlement will not be paid through an applicable contract or policy of insurance, the settlement shall not be effective until approved by the district court and entered as a judgment provided by law.

¶ 18 Title 51 O.S. Title 51 O.S. § 158(C) provides that if a policy or contract of liability insurance covering the State or political subdivision or its employees is applicable, then the terms of the policy govern the rights and obligations of the state or political subdivision and the insurer with respect to the investigation, settlement, payment and defense of claims or suits against the State or political subdivision or its employees covered by the policy. Read harmoniously with the rest of the section, 51 O.S.2011 § 158(C) permits the insurer of a State or political subdivision to handle investigation, settlement, payment, and defense of claims, provided an applicable policy provides for it to do so and provided it does not enter into a settlement which exceeds the insurance coverage without getting the approval of the governing body of the State or political subdivision or its designated representative.

¶ 19 Title 51 O.S.2011 § 158(E), upon which the parties' arguments in part revolve, provides that the State or a political subdivision shall not be liable for any costs, judgments or settlements paid through an applicable contract or policy of insurance but shall be entitled to set off those payments against liability arising from the same occurrence. Read in the context of the other subsections

described above, this provision unambiguously continues to refer to an applicable contract or policy of insurance covering the State or a political subdivision. Title 51 O.S.2011 § 158(E) ensures that the State and its political subdivisions are not obligated to pay amounts already being paid on their behalf by an applicable contract or policy of insurance: a result consistent with the collateral source rule and tort law generally. *See* The Restatement (Second) of Torts 920A (1979) (payments previously made by the tortfeasor or its insurer are not a collateral source of benefits).

¶ 20 The plain meaning of the 51 O.S. 2011 § 158 is further reinforced by 51 O.S. 2011 § 158(F), which again refers to an applicable contract or policy of insurance.[7] Title 51 O.S.2011 § 158(F) grants the State or a political subdivision the right of subrogation against the insurer issuing any applicable contract or policy of insurance if a judgment or claim under the provisions of the act results in monetary liability against the State or political subdivision.

¶ 21 The Legislature's failure to continuously insert "liability" prior to "applicable contract or policy of insurance" does not alter the meaning of provisions in a section that so obviously refer to the effects of the State or political subdivisions own insurance on the settlement and defense of claims. As this Court noted in *Maule v. Indep. School Dist. No. 9 of Tulsa County:*

> [d]etails are often omitted from legislative enactments which must be supplied by implication to avoid interminability in the drafting of legislation. In ascertaining and giving effect to the legislative will, inept or incorrect choice of words in a statute will not be construed and applied in a manner which would destroy the real and obvious purpose of the statute

1985 OK 110, ¶ 11, 714 P.2d 198 (footnotes omitted).

¶ 22 The State also singles out 51 O.S.2011 § 162(D) in support of its argument that it is entitled to a setoff for the amount Mariani received from her insurer. Title 51 O.S.2011 § 162(D) provides:

> **[t]he state or a political subdivision shall not, under any circumstances, be responsible to pay or indemnify any employee for any punitive or exemplary damages rendered against the employee, nor to pay for any defense, judgment, settlement, costs, or fees which are paid or covered by any applicable policy or contract of insurance.** Where any civil rights judgment upon which indemnification under subsection B of this section is applied for by an employee of the state includes an award for both actual and punitive or exemplary damages, the total amount of fees and costs for which indemnification may be allowed shall be limited to the percentage of fees and costs in the total award that the percentage of the award of actual damages bears to the total judgment awarded. It is the public policy of the State of Oklahoma that the state or a political subdivision may indemnify its employee for actual damages, fees, and costs as provided herein in any case in which the findings set out in paragraph B of this section have been determined.

Title 51 O.S.2011 § 162(D) (emphasis added).

¶ 23 Section 162 generally concerns indemnification to employees of the State or a political subdivision. *See Groseclose v. City of Tulsa,* 1998 OK 112, 990 P.2d 828. Title 51 O.S.2011 § 162(D) specifically provides for situations in which the State or a political subdivision shall not be required to pay or indemnify an employee. The first portion of this subsection provides for two primary exceptions: 1) punitive or exemplary damages rendered against the employee; and 2) any defense, judgment, settlement, costs, or fees which are paid or covered by any applicable policy or contract of insurance.

---

7. Title 51 O.S.2011 § 158(F) in fact uses the phrase "applicable contractor policy of insurance", but use of that phrase in this one instance, in the context of this statute, is undoubtedly a scrivener's error, and a scrivener's error cannot change the law. *Charlson v. State ex rel. Dept. of Public Safety,* 2005 OK 83, ¶ 11, 125 P.3d 672. A failure by the courts to recognize a scrivener's error and correct the error by judicial pronouncement may lead to absurd consequences. *Charlson,* 2005 OK 83, ¶ 9, 125 P.3d 672; *See Scurto v. Le Blanc,* 191 La. 136, 184 So. 567 (1938).

¶ 24 In context, it is evident from the plain language of the statute that the provision contemplates a policy or contract of insurance that covers the employee, under which the insurer would have a duty to defend.[8] In such situations where an applicable policy exists and the insured has fulfilled its duty, there is no need for the State or a political subdivision to pay for any defense, judgment, settlement, costs, or fees which are already being paid for by the insurer pursuant to the applicable policy. A reading where "applicable policy or contract of insurance" includes payments made to the injured party by its own UM carrier makes little sense in the context of this section.

### D. Other jurisdictions have abolished the collateral source rule explicitly and with very different statutory language, making a comparison inapposite in this cause.

¶ 25 The State urges a comparison between 51 O.S.2011 §§ 158(E) & 162(D) and the laws of three other jurisdictions that have abolished the collateral source rule with respect to tort claims against government entities: New Jersey, Ohio, and Pennsylvania.[9] The relevant statutory provisions of these States, however, are all distinguishable from 51 O.S.2011 §§ 158(E) & 162(D) in their direct reference to benefits **the claimant** receives from a policy or policy of insurance. These provisions all deal specifically with the abrogation of the collateral source rule, unlike 51 O.S.2011 §§ 158(E) & 162(D) which concern the effects of liability insurance on the mechanics of the State or a political subdivision's handling of claims and litigation.

### E. Prior case law and policy further support a determination that 51 O.S.2011 §§ 158(E) & 162(D) do not abrogate the collateral source rule with respect to claims under the GTCA.

¶ 26 This cause is not the first time this Court has been presented with an opportunity to determine whether provisions of the GTCA permit the State or a political subdivision to set off amounts received by a claimant from the claimant's own insurer. In *Salazar Roofing & Construction, Inc.*, this Court considered a cause in which an employee of Oklahoma City, acting within the scope of his employment, backed a city vehicle into a truck owned by Salazar Roofing & Construction. 2010 OK 34, ¶ 1, 249 P.3d 950. The city admitted liability and stipulated to damages, but denied the claim except to the

---

**8.** *See First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland*, 1996 OK 105, ¶ 13–18, 928 P.2d 298 (Discussing insurers' contractual duty defend).

**9.** N.J. Stat. Ann. § 59:9–2(e) provides:

[i]f a claimant receives or is entitled to receive benefits for the injuries allegedly incurred from a policy or policies of insurance or any other source other than a joint tortfeasor, such benefits shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant; provided, however, that nothing in this provision shall be construed to limit the rights of a beneficiary under a life insurance policy. No insurer or other person shall be entitled to bring an action under a subrogation provision in an insurance contract against a public entity or public employee.

Ohio Rev.Code Ann. § 2744.05(B)(1) provides:

[i]f a claimant receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against a political subdivision recovered by that claimant. No insurer or other person is entitled to bring an action under a subrogation provision in an insurance or other contract against a political subdivision with respect to those benefits.

The amount of the benefits shall be deducted from an award against a political subdivision under division (B)(1) of this section regardless of whether the claimant may be under an obligation to pay back the benefits upon recovery, in whole or in part, for the claim. A claimant whose benefits have been deducted from an award under division (B)(1) of this section is not considered fully compensated and shall not be required to reimburse a subrogated claim for benefits deducted from an award pursuant to division (B)(1) of this section.

42 Pa.C.S.A. § 8553(d) provides:

If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable under subsection (c), the amount of such benefits shall be deducted from the amount of damages which would otherwise be recoverable by such claimant.

extent of paying Salazar's insurance deductible. *Salazar*, 2010 OK 34, ¶ 1, 249 P.3d 950.

¶ 27 The City argued the claim was one based upon subrogation, and therefore it was not liable pursuant to 51 O.S.2001 § 155(27) and 51 O.S.2001 § 163(D). *Salazar*, 2010 OK 34, ¶ 2, 249 P.3d 950. However, the "City also argued that since Salazar had private insurance covering the claim (a collateral source of indemnity) that the City was liable only for Salazar's insurance-deductible payment." *Salazar*, 2010 OK 34, ¶ 3, 249 P.3d 950. The trial court rejected both arguments and granted judgment for Salazar. The City appealed and the Court of Civil Appeals reversed. We granted certiorari, reversed the opinion of the Court of Civil Appeals, and affirmed the judgment of trial court. *Salazar*, 2010 OK 34, ¶ 3, 249 P.3d 950. This Court determined:

> ¶ 4 Subrogation has been defined by this Court as "a doctrine the law has devised for the benefit of one secondarily liable who has paid the debt of another." *Sexton v. Continental Casualty Co.*, 1991 OK 84 ¶ 18, 816 P.2d 1135. In the instant matter, the Claim filed under the Governmental Torts Claim Act by Salazar was filed in Salazar's name, directly against the tortfeasor, for the benefit of the owner of the damaged vehicle. The action was not filed by the insurance carrier to recoup the amount paid to insured. Therefore it appears that this matter is a first-party claim, not a claim for subrogation. No subrogation is at issue in the instant matter. There is no party secondarily liable for the damage caused by the City's negligence present in the case at bar.

> ¶ 5 In the instant matter, the statutory language of 51 O.S.2001 § 155(27) does not bar Salazar's claim against Oklahoma City. Salazar's claim was not based on the theory of subrogation or indemnification, as the statute forbids. Neither does Salazar's claim offend 51 O.S.2001 § 163(D), which requires that all actions must be brought in the name of the real party in interest and no recovery may be made under the right of subrogation. Salazar's claim is its own and Salazar is the only party in interest. 51 O.S.2001, § 155(14) deals with

Workers' Compensation and is not applicable in the instant matter.

*Salazar*, 2010 OK 34, ¶ 4–5, 249 P.3d 950.

¶ 28 The lesson of *Salazar* is simple: nothing in the GTCA prohibits a claimant from recovering damages from the State or a political subdivision just because the claimant has received compensation from a collateral source, such as its own insurer. Simply put, the collateral source rule applies to the State or a political subdivision just as much as it does any private tortfeasor, and the GTCA does nothing to alter this.

¶ 29 Mariani's position concerning 51 O.S. 2011 §§ 158(E) & 162(D) is thus in accord with this Court's prior case law concerning the collateral source rule and its application under the GTCA, as well as with the Restatement (Second) of Torts § 920A (1979), which provides:

> (1) A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.

> (2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

The Comments to The Restatement (Second) of Torts § 920A (1979) provide in pertinent part:

> a. *Payments by or for defendant.* If a tort defendant makes a payment toward his tort liability, it of course has the effect of reducing that liability. This is also true of payments made under an insurance policy that is maintained by the defendant, whether made under a liability provision or without regard to liability, as under a medical-payments clause

Essentially, money paid out pursuant to 51 O.S.2011 §§ 158(E) & 162(D) on behalf of a tortfeasor State or political subdivision—or an employee—by the tortfeasor's own insurer, **is not a collateral source,** and therefore may be credited against the liability of those entities. *See Overturff v. Hart*, 1975 OK 13,

¶¶ 12–13, 531 P.2d 1035 (holding funds received by plaintiff from an insurance policy that was procured by the defendant and for which a premium was paid are not a collateral source). Title 51 O.S.2011 §§ 158(E) & 162(D) do not abrogate the collateral source rule under the GTCA, but in fact operate in harmony with it.

¶ 30 Holding that 51 O.S.2011 §§ 158(E) & 162(D) do not abrogate the collateral source rule with respect to claims arising under the GTCA is in concord with the overarching purpose of the GTCA and with public policy. The State is certainly correct that one of the primary purposes of the GTCA is to limit the State's liability in order to protect public funds. *Gladstone v. Bartlesville Indep. School Dist. No. 30*, 2003 OK 30, ¶ 15, 66 P.3d 442. The Legislature accomplished this purpose in several ways. As both parties note, 51 O.S.2011 § 154 specifically caps the State's liability in this cause at $175,000.[10] Section 154 places upper limits on the monetary liability of the State or a political subdivision for claims under the scope of the GTCA. Another manner in which the Legislature chose to curtail liability is the lengthy list of exemptions found in 51 O.S. Supp.2013 § 155, which exempts the State and political subdivisions from liability under the GTCA in numerous circumstances where a private tortfeasor might still be liable.

¶ 31 What the Legislature did not do in any of these sections is abrogate the collateral source rule with respect to claims arising under the GTCA. This Court is not at liberty to carve out an exception to the collateral source rule from the plain and clear language of GTCA.[11] To read such an exception into 51 O.S.2011 §§ 158(E) & 162(D) would be to punish individuals like Mariani for their foresight in obtaining UM coverage for the exact eventuality that arose in this cause: where the statutory cap on the State's liability found at 51 O.S.2011 § 154 prevents her from obtaining complete recovery for her injuries.

## CONCLUSION

¶ 32 Title 51 O.S.2011 §§ 158(E) & 162(D) collectively work together to ensure that the State or its political subdivisions are not liable for amounts that have already been paid out to GTCA claimants by an insurer on behalf of the State or a political subdivision. Because those funds are paid to a claimant on behalf of the tortfeasor, they are not a collateral source wholly independent of the wrongdoer. *See Blythe v. University of Oklahoma*, 2003 OK 115, ¶ 7, 82 P.3d 1021; *Overturff v. Hart*, 1975 OK 13, ¶¶ 12–13, 531 P.2d 1035.

¶ 33 An interpretation that Sections 158(E) and 162(D) serve to abrogate the collateral source rule for claims under the GTCA, allowing the State to set off collateral source

10. Title 51 O.S.2011 § 154(A) provides:

A. The total liability of the state and its political subdivisions on claims within the scope of The Governmental Tort Claims Act, arising out of an accident or occurrence happening after the effective date of this act, Section 151 et seq. of this title, shall not exceed:
1. Twenty-five Thousand Dollars ($25,000.00) for any claim or to any claimant who has more than one claim for loss of property arising out of a single act, accident, or occurrence;
2. Except as otherwise provided in this paragraph, One Hundred Twenty-five Thousand Dollars ($125,000.00) to any claimant for a claim for any other loss arising out of a single act, accident, or occurrence. The limit of liability for the state or any city or county with a population of three hundred thousand (300,000) or more according to the latest federal Decennial Census shall not exceed One Hundred Seventy-five Thousand Dollars ($175,000.00). Except however, the limits of said liability for the University Hospitals and State Mental Health Hospitals operat-

ed by the Department of Mental Health and Substance Abuse Services for claims arising from medical negligence shall be Two Hundred Thousand Dollars ($200,000.00). For claims arising from medical negligence by any licensed physician, osteopathic physician or certified nurse-midwife rendering prenatal, delivery or infant care services from September 1, 1991, through June 30, 1996, pursuant to a contract authorized by subsection B of Section 1–106 of Title 63 of the Oklahoma Statutes and in conformity with the requirements of Section 1–233 of Title 63 of the Oklahoma Statutes, the limits of said liability shall be Two Hundred Thousand Dollars ($200,000.00); or
3. One Million Dollars ($1,000,000.00) for any number of claims arising out of a single occurrence or accident.

11. *See Estrada v. Port City Properties, Inc.*, 2011 OK 30, ¶ 32, 258 P.3d 495 (refusing to carve out an exception to the collateral source rule from the plain and clear language of the Workers' Compensation Act, 85 O.S.2001 § 45).

benefits received by claimants from those claimants' own insurers, punishes those claimants for their foresight in procuring coverage. Such an interpretation is also contrary to the plain meaning of the sections when read in their entirety and in the context of the GTCA itself. We will not carve out an exception to the collateral source rule where the plain and clear language of the law does not provide for one. *See Estrada v. Port City Properties, Inc.,* 2011 OK 30, ¶ 32, 258 P.3d 495. This Court previously declined to adopt such an interpretation by implication in *Salazar Roofing & Construction, Inc. v. City of Oklahoma City,* 2010 OK 34, 249 P.3d 950, and we decline to do so today.

¶ 34 **JUDGMENT OF THE TRIAL COURT IS AFFIRMED.**

REIF, C.J., COMBS, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, COLBERT, and GURICH, JJ., concur.

TAYLOR, J., not participating.